JOSEPH F. SINNOTT, Individually and as Surviving Partner of ANDREW F. MOORE, Deceased, Appellant, v. THE GERMAN-AMERICAN BANK OF ROCHESTER, Respondent, Impleaded with Another.

1. SALES — RESCISSION — FACTS INSUFFICIENT TO ESTABLISH FRAUD. The insolvency of a vendee, coupled with the fact that he had carried on business for many years upon capital obtained from a bank upon forged commercial paper, does not negative the inference of an honest intention upon his part to pay for goods purchased, and will not entitle the vendor to rescind the sale upon the ground of fraud and reclaim the goods from the bank, which has subsequently obtained possession of them under circumstances constituting it a *bona fide* purchaser.

2. UNLAWFUL USE OF DESIGNATION "& Co." — PENAL CODE, § 363. Where the vendee has no actual partner or partners, the use of the designation "& Co." in the transaction of his business, in violation of section 363 of the Penal Code, making such use a misdemeanor, could have no operation in the case of an executed agreement. The statute is highly penal and should be strictly construed.

*Moore* v. *German-American Bank*, 33 App. Div. 641, affirmed.

(Argued October 16, 1900; decided October 30, 1900.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 10, 1898, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term, and an order denying a motion for a new trial.

This was an action for the recovery of certain barrels of whisky, which, as it was alleged, were wrongfully detained from the plaintiffs by the defendant. The following are the material facts, as disclosed by the record: In 1896 Feiock was, and he had been for some years, engaged in the business of buying and selling wines, liquors, groceries, etc., in the city of Rochester, under the firm name and style of " B. Feiock & Co." He had been a customer of the plaintiffs, wholesale whisky dealers, for some years past, and in the months of March and May, 1896, they sold and delivered to him some barrels of whisky on credit. At the time, Feiock was indebted to the defendant bank, upon commercial paper discounted by it for him, to the amount of upwards of $25,000. The bank, suspecting that some of the discounted notes were forgeries, called upon him to take up his line of discounted paper and to give his demand note for the amount of his indebtedness. The note was given by Feiock and the bank surrendered to him all of the discounted notes. It commenced suit upon the demand note and judgment was consented to in the action. Execution was issued, a levy was made upon Feiock's property and a sale was had, at which the whole stock of goods was bid in by the bank for the sum of $5,000. It appeared that at the time of the transaction with the plaintiffs, Feiock's indebtedness to the bank and to other creditors, who included members of his family, exceeded the amount of his assets. It, also, appeared that the capital upon which Feiock had been carrying on his business for many years was procured by discounting forged commercial paper. The plaintiffs, claiming that Feiock had obtained the whisky from them by fraud, demanded of the bank the possession and return of the goods and, upon a refusal, brought this action. At the conclusion

of the plaintiffs' case, the trial judge dismissed the complaint upon the ground that no cause of action was made out against the bank. Upon appeal the Appellate Division in the fourth department affirmed the judgment in defendant's favor and the plaintiff now appeals to this court.

*Frank J. Hone* for appellant. One who purchases goods on credit with the intention not to pay for them is guilty of fraud and the sale can be rescinded at the option of the seller. In such a sale title passes back and goods can be taken in replevin unless they have passed into the possession of a *bona fide* holder for value. (*Devoe* v. *Brandt*, 53 N. Y. 462; *Coursey* v. *Morton*, 132 N. Y. 556; *Anonymous*, 67 N. Y. 508; *Stallcup* v. *Bank*, 6 N. Y. S. R. 512.) The contract of sale by plaintiffs to Feiock was void or voidable because of Feiock's unlawful use of the firm name "B. Feiock & Co." It was unenforceable as far as Feiock was concerned. It was voidable at the election of plaintiffs. On rescission by plaintiffs no title passed and plaintiffs had the right to replevin. (*Swords* v. *Owens*, 43 How. Pr. 176; *Barron* v. *Yost*, 35 N. Y. S. R. 380; *Hallett* v. *Novion*, 14 Johns. 290; *Wood* v. *E. Ry. Co.*, 72 N. Y. 196; *Ryan* v. *Hardy*, 26 Hun, 176; *Gay* v. *Seibold*, 97 N. Y. 472.) Any false representations which were material to credit and on which credit was actually based, would be fraud which would give plaintiffs, on discovering, the right to avoid the contract. Feiock did make false representations which were material to credit and on which credit was actually based. (*Arthur* v. *Griswold*, 55 N. Y. 400.) Feiock's suppression of the facts concerning his financial condition was a fraud on plaintiffs. (*Rothmiller* v. *Stein*, 143 N. Y. 581; *Hotchkin* v. *T. Nat. Bank*, 127 N. Y. 329; *Brown* v. *Montgomery*, 20 N. Y. 287; *Nichols* v. *Pinner*, 18 N. Y. 295; *Devoe* v. *Brandt*, 53 N. Y. 462.)

*George F. Yeoman* for respondent. In order to avoid a sale the intent not to pay must exist when the property is purchased, and without proof of such an intent a judgment for the

plaintiff cannot be sustained. (*Hotchkin* v. *I. Nat. Bank,*
127 N. Y. 329.)   The fact that Feiock was violating a statute
in doing business alone during the period in question under
the name of " B. Feiock & Co.," does not give the plaintiffs
an election to treat as void executed contracts which they had
made with him. (*Kennedy* v. *Budd,* 5 App. Div. 140 ; *Bar-
ron* v. *Yost,* 35 N. Y. S. R. 380 ; *Gay* v. *Siebold,* 97 N. Y.
472 ; *Taylor* v. *Bell & Co.,* 18 App. Div. 173 ; *Wood* v. *E.
Ry. Co.,* 72 N. Y. 198 ; *Swords* v. *Owen,* 43 How. Pr. 176.)
The bank was a *bona fide* purchaser of the whisky and was
innocent of any knowledge of a fraud in Feiock's purchases, if
any existed. (Benj. on Sales, § 649 ; *Root* v. *French,* 13
Wend. 570 ; *Park Bank* v. *Watson,* 42 N. Y. 490 ; *Carey* v.
*White,* 52 N. Y. 138 ; *Barnard* v. *Campbell,* 55 N. Y. 456 ;
*Stevens* v. *Brennan,* 79 N. Y. 254.)

GRAY, J.   The appellant claims that the character of the
financial transactions between Feiock and the bank was such
as to negative the inference of an honest intention upon
Feiock's part to pay for the goods which he had purchased of
the plaintiffs and that, therefore, they were entitled, for the
fraud practiced, to rescind the sale and to repossess them-
selves of the goods sold, as they had not passed into the pos-
session of a *bona fide* purchaser.   It is conceded that Feiock's
insolvency, alone, furnished no inference of an intention not
to pay for the goods.   The testimony was that he did intend
to pay ; but it is argued that the circumstances were such, and
that the nature of the insolvency was so affected by his rela-
tions to the bank, as to furnish the legal conclusion that the
intention and reasonable expectation of the ability to pay did
not exist.   No case is cited in support of the plaintiffs' posi-
tion and I do not think that any can be found in the books.
I do not think it can find support in any legal principle.
Feiock was under no obligation to communicate to persons
dealing with him the extent and nature of his transactions
with others.   The presumption was that, having procured the
capital upon which to carry on his business, he would use it

in the discharge of his current obligations, with the reasonable
expectation that the business would prove profitable enough
to satisfy, eventually, what indebtedness had been incurred.
Whether in the procuring of his capital his conduct was
fraudulent; whether his schemes rendered him amenable to
legal punishment were not matters, of which it could be
predicated that they evidenced an intention on his part not
to pay for goods purchased in the conduct of the business.
His purpose was to continue his business. It might be abor-
tive, or liable to defeat by reason of his fraud in raising
moneys for capital; but not only there might be, but there
would be, the clear intention to pay for goods purchased.
The indebtedness to the bank was a fact. How it arose, or
whatever Feiock's conduct towards it, they were matters
between themselves; the disclosure of which he was not
bound to volunteer to others with whom he might have deal-
ings. It is an untenable proposition, in my opinion, that the
guilt of Feiock's conduct in his transactions with the bank
made his subsequent purchases from the plaintiffs voidable at
their election. Without their inquiry, it was immaterial, so
far as they were concerned, how he had procured the capital
with which he was carrying on the business.

The proposition is clear that the bank was a *bona fide* pur-
chaser of the whisky. If there was any fraud in the transac-
tion of this purchase by Feiock from the plaintiffs, the bank
had no knowledge of it. At the time of taking the demand
note, upon which judgment was recovered for the amount of
the existing indebtedness to the bank, the latter gave up to
Feiock the good notes which it held, as well as the forged
notes, and at the execution sale it bought in the property
which had been levied upon. Under these circumstances, the
bank became the purchaser and holder in good faith of the
whisky in question, within the rules of law.

It is further claimed by the plaintiffs that the use by Feiock
of the firm name and style of " B. Feiock & Co." was unlawful
and had the effect of making the transaction of sale between
them voidable at their election. This contention has reference

to the statute, which makes it a misdemeanor for a person who transacts business to use the designation " & Company," or " & Co.," when no actual partner or partners are represented thereby. (Penal Code, section 363.) I think this contention is, also, quite untenable. If we might assume that the violation by Feiock of the statute disabled him from enforcing the performance of any executory contract, that was not this case. This was an executed agreement and it is inconceivable that, in such a case, the statute should have any operation. It is a highly penal one and deserves a strict construction. (*Gay* v. *Seibold*, 97 N. Y. 472.) It was a measure intended to be in the interests of the commercial community and had its foundation in public policy. It simply made it a misdemeanor to do what was therein specified and that is all. To extend its operation as far as the plaintiffs would have it, would be to give a construction to it which would permit of its injurious operation upon persons whose dealings with the guilty party have been in good faith. Such a construction would be foreign to the purpose of the enactment; contrary to public policy and without support in legal principles.

For these reasons I think that the judgment should be affirmed, with costs.

BARTLETT and VANN, JJ. (dissenting). The appellant's counsel states that insolvency alone is not urged as evidence of intention not to pay, for a man may be insolvent, that is, he may owe more than he has assets to pay, and yet honestly expect to tide over and finally make up the deficiency.

We here have insolvency, coupled with a condition of affairs that is unique in the history of business.

Feiock was transacting business on the proceeds of forged paper and renewals of the same which he had discounted at the defendant bank.

When it was discovered that certain of this paper was forged, the bank compelled Feiock to give his demand note for the full amount of his indebtedness, and at once commenced suit on the note, taking judgment under an offer, and

appropriated by sale all the assets of the debtor except certain notes turned over to his wife.

Feiock's indebtedness to the bank was about $25,000. This amount was represented by some $20,000 of forged paper which Feiock destroyed when it was taken up and $4,600 in notes, said to have been genuine, turned over to his wife.

It is conceded that the basis on which Feiock transacted his business was the proceeds of these felonies and that he could only hope to continue in trade so long as he was not discovered.

It also appears that this is the second time he had been compelled to close out business by reason of similar methods, carried on with another Rochester bank.

The defendant bank discovered these forgeries about the 10th of June, 1896, the plaintiffs sold their goods to Feiock in the months of March and May, 1896, and they were taken under the bank's levy.

It is now urged that Feiock, doing business under these conditions, could purchase goods, having an honest intention to pay for them, and that the transaction is free from fraud.

It was stated by counsel on the argument that no case could be found in the books holding that such a purchase of goods was fraudulent.

The statement may be true, as it is quite probable that this is the first time the court has been confronted by such a proposition.

We are of opinion that a man conducting business, the sole basis of which is the floating of forged paper and its renewals in his bank, is in a situation where he cannot entertain the honest intention to pay his debts, and that all his purchases of goods are fraudulent.

Parker, Ch. J., Martin, Cullen and Werner, JJ., concur with Gray, J., for affirmance.

Bartlett and Vann, JJ., dissent in memorandum.

Judgment affirmed.