# REUBEN B. DISBROW v. CREAMERY PACKAGE MANU-FACTURING COMPANY and Others.[1]

February 25, 1910.

Nos. 16,356—(80).

**Demurrer to Amended Complaint.**
 A defendant may demur, and allege that an amended complaint states no cause of action, although that ground was not assigned upon demurrer to the original complaint.

**Same — Review on Appeal.**
 An appeal from a judgment entered upon demurrer, after leave to amend is denied, brings up for review the order sustaining the demurrer, as well as that denying leave to amend.

**Illegal Acts — Effect on Right to Profits.**
 A claim will not be enforced which arises from and is for a share of the profits resulting from an illegal or fraudulent transaction to which the claimant was a party; but, where the claimant has a valid demand independent of the illegal act, an action upon it will be entertained, notwithstanding the commission of illegal acts during the course of the business.

**Cause of Action — Statute of Limitations.**
 Complaint *held* to state a single cause of action for some relief, not barred by the statute of limitations.

After the decision of the former appeal, 104 Minn. 17, 115 N. W. 751, sustaining a demurrer to the complaint, plaintiff served an amended complaint against the Creamery Package Manufacturing Company, the Owatonna Manufacturing Company, the Disbrow Manufacturing Company, Darius W. Payne and Levi A. Disbrow. The first two named companies demurred separately on the grounds of misjoinder of causes of action and that the complaint did not state facts constituting a cause of action. The other defendants did not appear. The district court for Steele county, Buckham, J., sustained the demurrers. Thereafter the court having ordered the

[1] Reported in 125 N. W. 115.

companies demurring to show cause why a proposed amended complaint should not be allowed to be served and filed, as moved by plaintiff, the matter was heard and the motion denied. The plaintiff being in default for want of a complaint, the demurring defendants had judgment for their costs. From this judgment plaintiff appealed, his notice of appeal stating he appealed, "reviewing on said appeal all intermediate orders entered in said cause subsequent to the remand on the former appeal in said cause." Reversed with leave to demurring defendants to answer.

*J. A. & A. W. Sawyer,* for appellant.

*Cohen, Atwater & Shaw,* for respondent Creamery Package Manufacturing Company.

*W. A. Sperry,* for respondent Owatonna Manufacturing Company.

O'BRIEN, J.

This action was commenced in June, 1907. An order sustaining a demurrer because of defect of parties defendant was affirmed in Disbrow v. Creamery Package Mnfg. Co., 104 Minn. 17, 115 N. W. 751. The complaint was then amended so as to include the omitted necessary defendants. Thereupon the original defendants, the Creamery Package Manufacturing Company and the Owatonna Manufacturing Company, interposed separate demurrers upon the ground that two or more causes of action were improperly united and that the complaint did not state facts sufficient to constitute a cause of action. The demurrers were sustained upon the second ground. The plaintiff moved to be allowed to again amend the complaint, which motion was denied, and judgment was entered in favor of the defendants so demurring. Plaintiff appeals from the judgment.

The complaint, read in connection with the exhibits attached to it, alleges substantially as follows: On August 2, 1894, the plaintiff and the defendant Payne were the owners of letters patent No. 490,105, and applications for others patents, numbered, respectively, 495,322, 508,566, and 495,321, covering churns and butter-working machinery suitable for use in creameries, and on that day assigned

the same to F. B. Fargo & Company, a Wisconsin corporation. The agreement [Exhibit A] contained the following provisions:

"II. The party of the second part, in consideration therefor, hereby agrees to pay to the parties of the first part, their heirs and assigns, a royalty of five ($5.00) dollars on each combined churn and butter worker manufactured or caused to be manufactured and sold by said party of the second part during the life of any of the above patents obtained, or to be obtained, whether said combined churns and butter workers are made under any of said patents or not."

"VII. The parties of the first part hereby further agree that the party of the second part shall have the benefit of any and all improvements or other inventions that may be made by them or either of them during the continuance of this contract upon combined churns and butter workers, and in case said party of the second part desires any such improvements or inventions to be patented the parties of the first part agree to execute such application and assignment for the purpose of vesting the title thereto in the said party of the second part in accordance with the terms of this contract."

Prior to the execution of this contract the plaintiff had made two other inventions for or connected with churns, and F. B. Fargo & Co. induced him to permit the application for those patents to be made by one Charles S. Brown, upon the representation that the patents, when issued, would be assigned by Brown to the company, and would be of much greater value and benefit to the plaintiff if handled in that manner. The plaintiff made drawings for Brown's use, to whom the patents were subsequently issued, being known as the Victor patent, No. 539,571, issued May 21, 1895, and the Planetary patent, No. 565,720, issued August 11, 1896. Thereafter, and on December 15, 1896, the Fargo Company reassigned to the plaintiff and Payne the Disbrow patent, No. 490,105. Nothing is alleged as to any disposition of the applications for patents described in Exhibit A, nor as to any consideration for the reassignment of patent No. 490,105.

The plaintiff was then, with some associates, engaged in manufacturing churns known as the "Winner" or the "New Disbrow," and

to carry on that business organized a corporation pursuant to the laws of Minnesota, named Disbrow Manufacturing Company. This company executed a mortgage to the defendant the Creamery Package Manufacturing Company to secure money loaned to it. It may be fairly inferred from the complaint that the Disbrow Company manufactured churns under certain patents, including the Disbrow patent No. 490,105, although the complaint does not definitely allege how the company acquired the right so to do. In 1897 the Creamery Company took over the entire plant and business of F. B. Fargo & Company, including the Victor and Planetary patents. A large number of other companies were subsequently absorbed, and finally the defendant the Owatonna Manufacturing Company and the Creamery Package Manufacturing Company, for the purpose of establishing an unlawful monopoly in the manufacture and sale of creamery supplies, and, further, to prevent plaintiff from making or enforcing any claim as to the Victor and Planetary patents, and from enforcing any demand against F. B. Fargo & Co., or the Owatonna Manufacturing Company in relation thereto, and while the plaintiff was in ignorance of such unlawful designs, demanded of the plaintiff and the other officers of the Disbrow Company that there be assigned and conveyed to the Owatonna Manufacturing Company all patents for the Winner churn, including the Disbrow patent, No. 490,105, and the entire manufacturing plant. To induce said sale the plaintiff was promised that proper assignments to plaintiff, or the Owatonna Company as his assignee, would be procured of both the patents issued to Brown, and the Owatonna Company would manufacture churns under said patents, and pay to the Disbrow Manufacturing Company royalties upon each churn so made, as well as royalties upon the Winner churn, but that if the Disbrow Company refused to transfer its plant to the Owatonna Company the mortgage previously given by it to the Creamery Company would be foreclosed and its business destroyed.

Thereupon Exhibits B, C, and D were executed. Exhibit B is an agreement between the Disbrow Manufacturing Company, Reuben B. Disbrow, Levi A. Disbrow, Darius W. Payne, and Horatio

Seeley, parties of the first part, and the Owatonna Manufacturing Company, party of the second part, in which the parties of the first part agree to assign to the party of the second part all their right, title, and interest in and to the patents invented and to be invented as follows: Patent No. 490,105, issued to Reuben B. Disbrow and Darius W. Payne, dated January 17, 1893; No. 527,673, dated October 16, 1894, to Reuben B. Disbrow; No. 527,716, dated October 16, 1894, to Darius W. Payne; No. 564,977, dated August 4, 1896, to Reuben B. Disbrow; No. 564,978, dated August 4, 1896, to Levi A. Disbrow. The agreement contained the following clause:

"IV. In lieu and in place of the interest in the profits from the manufacture and sale of said combined churns and butter workers reserved by Reuben B. Disbrow and Darius W. Payne under said assignment of October 2, 1893" (that being a prior agreement between Disbrow and Payne and the Owatonna Company, not necessary to be considered here), "said party of the second part agrees to pay to the Disbrow Manufacturing Company, one of the parties of the first part, in consideration of the assignment to said party of the second part of said patents and inventions a royalty on each combined churn and buttermaker.  *  *  * "

Also: "V. It is hereby agreed that said party of the second part shall pay to said Disbrow Manufacturing Company the above-specified royalty on all combined churns and butter workers manufactured and sold by it during the life of this contract, whether said machines contain any of the features of any of said patents or not.  *  *  *"

Exhibit C was an assignment of the patents last mentioned to the Owatonna Company; Exhibit D, an agreement on the part of the Creamery Company for the satisfaction of the mortgage, and that it would, as the sole sales agent of the Owatonna Company, pay directly to the Disbrow Company the royalties provided for in Exhibit B.

It is alleged upon information and belief that thereafter an agreement was made between the Creamery Company and the Owatonna Company to the effect that if the Owatonna Company should be compelled to pay any royalty to the Disbrow Company it would be reim-

bursed by the Creamery Company, but that it would pay no such royalties unless actually compelled to do so. The complaint alleges full knowledge by the defendants of the plaintiff's rights in the patents, and that since 1898 the defendants the Creamery Company and the Owatonna Company, in violation of the laws of this state and of the federal statute, continued to combine and maintain a monopoly in the manufacture of creamery supplies, and have in the carrying out of this plan transacted business in the name of fictitious companies for the purpose of concealing the monopoly which they enjoy, and that the Creamery Company, when taking over the plant of the Fargo Company, assumed all the obligations of that company. The tenth paragraph of the complaint is as follows:

"No royalties or payments of any kind soever upon or on account of any churns manufactured under said Victor or Planetary patents have ever been paid or accounted for by either of these defendants to this plaintiff, nor to said Disbrow Company; nor has any royalty or payment been so made or accounted for by any party or corporation whatever since the year 1896."

In the eleventh subdivision of the complaint it is alleged: "In October, 1897, plaintiff, having disposed of all his stock in said Disbrow Company, left the state of Minnesota and engaged in business elsewhere, and remained absent from said state, excepting a family visit of three days at Thanksgiving in 1901, until late in June, 1905. During all said time plaintiff in good faith supposed and believed that the defendants had kept and fulfilled their said agreements made by them to him and to said Disbrow Company in the year 1897, as hereinbefore set out."

Then follow allegations as to plaintiff's discovery of the frauds which he claims were practiced upon him. In the twelfth paragraph it is alleged that the defendants the Creamery Company and the Owatonna Company have made and sold 6,000 or more of the Victor churns, made under the Victor patent, No. 539,571, upon which large profits have been secured, as well as other large profits derived under the Victor and Planetary patents; and, finally, that all of the representations, statements, promises, and agreements made by the Cream-

ery Company and the Owatonna Company to the plaintiff were false and fraudulent, and made. for the purpose of depriving him of the benefit of his patents, whereby he has been damaged in the sum of $350,000.

First. Judgment was demanded that the assignment of April 21, 1897, a copy of which is Exhibit C, attached to the complaint, be held void and of no effect against the plaintiff.

Second. That an accounting be had to ascertain (a) the amount of the benefits obtained by the defendants the Creamery Company and the Owatonna Company under the Victor and Planetary patents; (b) the amount and prospective value of these patents for the unexpired term thereof; (c) the amount of plaintiff's damages because of the fraudulent acts of the defendants with reference to these two patents.

Third. For judgment against those two defendants for his damages suffered by reason of said fraudulent conduct in the sum of $350,000.

Fourth. That in lieu of such damages the defendants be decreed to hold the Victor and Planetary patents in trust for the benefit of the plaintiff and be required to assign the same to him.

In the memorandum filed with the order sustaining the demurrers, the learned trial judge said: "Plaintiff's entire cause of action, in whatever light it is viewed, is bottomed on the Victor and Planetary patents. On the strength of Kennedy v. Hazelton, 128 U. S. 667 [9 Sup. Ct. 202, 32 L. Ed. 576], those patents must be held 'unauthorized by law and void,' and that 'there can be neither legal nor equitable ownership of a void patent.'" Leave to amend the complaint, so as to show that the plaintiff had not participated in the illegality involved in the procuring of the Victor and Planetary patents, was denied, and judgment entered.

1. We think the demurrers were properly entertained. It is well settled that one may allege as many separate grounds for demurrer as he sees fit, and that the court will consider only those which are alleged. Walsh v. Byrnes, 39 Minn. 527, 40 N. W. 831. If the original complaint had been sustained, the defendant could still have

claimed that it failed to state a cause of action, by a motion for judgment or objections to evidence upon the trial. But the complaint was not sustained, and, whatever may be said as to the right of a defendant to demur to an amended complaint upon some of the statutory grounds, there is no reason for holding that such a demurrer may not be interposed upon the ground of no cause of action. At most, the permission to allow the demurrers to be interposed rested in the discretion of the court, of which there was no abuse. 6 Enc. Pl. & Pr. 381; Hauselt v. Fine, 18 Abb. N. C. (N. Y.) 142, 146; McIntyre v. Griswold, 2 How Pr. (N. Y.) 113; Post v. Pearson, 108 U. S. 418, 2 Sup. Ct. 799, 27 L. Ed. 774; Calder v. Haynes, 7 Allen (Mass.) 387. A different conclusion from this appears to be reached in Bean v. Ayers, 69 Me. 122, but under somewhat different rules of practice.

2. The application to be allowed to amend in no manner waived any error in the order sustaining the demurrer. In Cook v. Kittson, 68 Minn. 474, 71 N. W. 670, it was held that by answering after a demurrer is overruled the defendant waives the right to assign as error the order overruling the demurrer. Obviously this is true, because the defendant may in his answer take advantage of any position which could be taken upon demurrer. If the amendment had been allowed, it is probable that no error in sustaining the demurrers would be considered at any subsequent stage of the case, but it is clear that when leave to amend is denied, and judgment entered, an appeal brings up for review the order sustaining the demurrer, as well as that denying leave to amend. Section 4365, R. L. 1905.

3. The demurrers were sustained because it appeared that the Victor and Planetary patents were fraudulently obtained, to which fraud the plaintiff was a party; the court applying the well-known rule that under such conditions no relief will be granted a wrongdoer. If the action is one arising solely under those patents, we think it must be said that the plaintiff cannot recover. According to the complaint he consented to the applications being made in Brown's name, and prepared drawings of the Victor patent for Brown, and it must be taken that the drawings were to enable Brown to make the ap-

plication. In addition, the complaint alleged that plaintiff first refused to consent to this procedure until persuaded that it would be beneficial to him, so that if, at the time the applications were made for these patents, no prior contract existed between the plaintiff and the Fargo Company, and after the issuance of the patents the Fargo Company refused to carry out its part of the illegal contract, the plaintiff would be without remedy. Kennedy v. Hazelton, 128 U. S. 667, 9 Sup. Ct. 202, 32 L. Ed. 576; McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117; Continental Wall Paper Co. v. Voight & Sons, 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486.

But before these illegal acts were performed the Fargo Company had entered into a perfectly valid agreement with the plaintiff and Payne whereby, in consideration of an assignment to it of a certain patent and applications for others, it agreed to pay them a royalty of five dollars on each combined churn manufactured by it, whether manufactured under those patents or not. If that agreement remained in force, and the Fargo Company continued to manufacture combined churns, it would be obliged to pay the plaintiff and Payne a royalty upon each, and the fact that it manufactured churns under the apparent protection of the Victor and Planetary patents, rather than under the original patent, No. 490,105, would be immaterial, as the claim could be established without recourse to the illegal transaction. The plaintiff's case would then fall under that line of authorities which hold that where the claim is not dependent upon an illegal or unlawful transaction, it will not be defeated merely because in the course of the business the plaintiff and defendant together committed acts which were illegal. In such a case the plaintiff's claim does not originate, nor is it dependent upon the unlawful act. Sharp v. Taylor, 2 Phillips' Ch. 801; McBlair v. Gibbes, 17 How. 232, 15 L. Ed. 132; Brooks v. Martin, 2 Wall. 70, 17 L. Ed. 732; Armstrong v. Toler, 11 Wheat. 258, 6 L. Ed. 468; Sinnott v. German American, 164 N. Y. 386, 58 N. E. 286; Wells v. McGeoch, 71 Wis. 196, 35 N. W. 769; Hanover Nat. Bank v. First Nat. Bank, 109 Fed. 421, 48 C. C. A. 482; 9 Cyc. 556; Eagle Roller-Mill Co. v. Dillman, 67

Minn. 232, 69 N. W. 910; Gunnaldson v. Nyhus, 27 **Minn. 440, 8**
N. W. 147.

If the plaintiff could maintain an action against the Fargo Com-
pany for the royalties agreed to be paid by that company under the
contract, Exhibit A, had it continued to manufacture churns, and the
Creamery Company, in taking over the plant of the Fargo Company,
agreed to assume all its obligations, and then, conspiring with the
Owatonna Company, secured by deceit and misrepresentations all
the patents in which the plaintiff had an interest, and those com-
panies under some secret agreement are engaged in manufacturing
and selling churns, it is not clear that the plaintiff has not the right
to compel an accounting under the original contract, Exhibit A, made
with the Fargo Company.

4. It is true it is alleged that on December 15, 1896, the Fargo
Company reassigned to the plaintiff and Payne the original patent,
No. 490,105, and that the Disbrow Company, organized at about
the same time, engaged in the manufacture of churns presumably
under that patent. The complaint does not state what the considera-
tion was for this reassignment, nor is any mention made of the ap-
plications for patents which were also assigned to the Fargo Company
by Exhibit A. We cannot say, therefore, that the allegations of the
complaint show that Exhibit A was rescinded. If, in fact, the reas-
signment of patent No. 490,105 was because of any such rescission,
that is a defense which must be pleaded. Such relief is not barred
by the statute of limitations, but at most there would be barred the
claim for royalties which became due more than six years prior to the
bringing of this action.

5. It appears that by the last agreement, Exhibit B, the payments
accruing under it were to be made to the Disbrow Company, and
that the plaintiff in 1897 disposed of his stock in that company. It
is therefore difficult to see how he can complain because of the non-
payment of the royalties; but if the entire transaction was in further-
ance of an unlawful conspiracy in restraint of trade, in which he
was an innocent victim, he may ask to have it set aside and be re-
stored his interest in the patents then assigned. The allegations as

to when plaintiff discovered the frauds which he claims were practiced upon him are, if true, sufficient to show that this relief is not barred by the statute.

6. There are many statements in this complaint which seem to require further explanation; but upon demurrer each allegation must be taken to be true, and the pleading given the benefit of every possible presumption. Thus construed, it alleges a conspiracy between the Creamery Company and the Owatonna Company to deprive the plaintiff of his property and establish with it a monopoly, in violation of the state and federal statutes, in the carrying out of which, and for the purpose of compelling the plaintiff to part with his interests, they resorted to threats and false representations. There is only one cause of action, as it is claimed that every act which is complained of was performed in the carrying out of this unlawful scheme. It does not appear affirmatively that the plaintiff has lost all right to relief, and we hold that upon the allegations of the complaint the plaintiff is entitled either to an accounting under the terms of Exhibit A, or to a cancelation of Exhibits B and C.

The judgment is reversed, and the case remanded, with directions that the defendants interposing the demurrers may answer within twenty days after notice of the filing of the remittitur in the district court.