# THE W. T. RAWLEIGH COMPANY v. FRED M. SHOGREN AND OTHERS.[1]

November 9, 1934.

No. 29,999.

[1]Reported in 257 N. W. 102.

*Howard W. Anderson,* for appellant.
*R. A. McOuat,* for respondents.

*JULIUS J. OLSON, Justice.*

Plaintiff appeals from an adverse judgment entered pursuant to findings for defendants.

The action was brought by plaintiff to recover a claimed balance of $555.27 due it for goods sold to defendant Shogren pursuant to a written contract. The other defendants are sureties. The contract provides that plaintiff will sell "such reasonable quantities of its products as the buyer [Shogren] may order at wholesale prices." Either party to the contract is authorized to terminate the same upon written notice to the other. In the event of such termination, "all accounts incurred hereunder shall become due and payable immediately. If this contract is not so terminated it shall expire on the 31st day of December, 1931." The final paragraph of the contract reads as follows:

"It is mutually understood and agreed that this is a contract of buyer and seller, and not of agency; and that any sales promotion or service letters or bulletins, advertising matter or other literature that seller may send buyer shall not change this relationship, nor be considered as orders, instructions or directions, but only as suggestive, educational and advisory (which the buyer may or may not follow as he may choose) and shall not alter, change or modify this contract in any way; it being agreed that it can only be changed by consent of both parties in writing."

The surety defendants executed an agreement which is a part of the same page upon which the contract is printed. Amongst other things they agree that:

"We, the undersigned, do hereby jointly and severally enter ourselves as sureties, and unconditionally promise, guarantee and agree to pay said seller for any and all goods, wares and merchandise sold said buyer under the above and foregoing contract, hereby expressly

consenting and agreeing to all the terms, conditions and provisions thereof; * * * We also agree that any statement made by the buyer as to the amount of indebtedness due at any time shall be binding upon us. We also agree that it shall not be necessary for the seller to first exhaust its remedies against the buyer before proceeding to collect from us."

The contract and surety agreement were made a part of the complaint. Shogren's separate answer denied the allegations of the complaint except as thereinafter "admitted, qualified or explained," and then proceeds thus:

"Defendant Shogren admits that plaintiff is a corporation, and that he signed the agreement referred to in the complaint, long prior to November 10, 1930, and on said date was indebted to plaintiff in a larger amount on November 10, 1930, than on December of 1931, and that on December 1, 1931, he owed plaintiff $555.27."

The sureties answering in their own behalf pleaded four defenses. Only the fourth was deemed proper by the trial court. It is thus pleaded:

"And for a fourth defense to said complaint, defendants allege that a large portion of plaintiff's merchandise consists of drugs, medicines, tonics and alteratives, which the plaintiff is engaged in selling contrary to the Food and Drug Laws of the state of Minnesota, particularly section 5805, General Statutes of Minnesota for the year 1923.

"That neither the plaintiff nor the said Fred M. Shogren are physicians or pharmacists and the said plaintiff and the said defendant Shogren, were engaged at all times from 1928 in selling drugs and medicines to the public, all contrary to the said statutes of the state of Minnesota."

Plaintiff's reply put in issue all defenses pleaded by the sureties. A jury was duly impaneled, and the trial proceeded. Plaintiff made due proof of its claim. Shogren was called for cross-examination under the statutes on this phase of the case and testified:

Q. "There has never been any dispute, has there, Mr. Shogren, as to the amount due from you to the company?

486

A. "No.

Q. "That is the amount due, you admit, as of December 1, 1931, that the amount due was the sum of $555.27?

A. "As near as I could figure it, yes."

His counsel, Mr. McOuat, stated: "There isn't any dispute as to the amount Shogren was indebted to the company." To avoid the obvious consequences of what had been established in plaintiff's behalf, the defendants sought to avoid liability upon the theory that plaintiff and Shogren had been engaged in selling medicines and drugs in violation of 1 Mason Minn. St. 1927, §§ 5805, 5814.

Shogren testified that he was not a pharmacist or druggist; that he ordered by mail and received from plaintiff aspirin, headache tablets, cough lozenges, cold tablets, nux and iron tablets, mustard ointments, vapor balms, rheumatic tablets, effervescent salts, and also numerous other articles not claimed by defendants or any of them to have been sold in violation of any law. The record does not disclose what proportion of the total sales consisted of drugs or medicines, nor is there any proof as to whether any of the articles described as medicines or drugs were "proprietary medicines." Nor is there any evidence to disprove plaintiff's claim that it is engaged exclusively in the wholesale business or that the relation between plaintiff and Shogren was any other than that of wholesale dealer and retail merchant.

When the evidence was closed plaintiff moved for an instructed verdict on the ground that the defendants had failed to establish any defense. The court refused so to do and also refused to submit to the jury any fact question. It was of the view that the issues were of law rather than fact. In passing upon the case at this stage the court said: "I have concluded, therefore, it is best for both parties, whether they like it or not, for me to reserve the determination of the case myself and make findings." Plaintiff duly excepted to the court's rulings. Thereafter the court made findings substantially as follows:

(1) That plaintiff is a foreign corporation duly authorized to do business in Minnesota and that it maintains a shipping warehouse and branch office at Minneapolis.

(2) That on January 2, 1931, plaintiff and defendants entered into the written contract attached to the complaint.

(3) That pursuant to said contract during the year 1931, and pursuant to similar annual contracts theretofore made, the defendant Shogren ordered of plaintiff and plaintiff furnished to him goods, wares, and merchandise of the reasonable value and credits as follows:

| "Year | Amount of Sales | Amount of Payments or Offsets |
|---|---|---|
| "1928 | $900.55 | $376.98 |
| "1929 | 981.13 | 831.03 |
| "1930 | 906.11 | 837.25 |
| "1931 | 458.79 | 646.05" |

(4) That on December 1, 1931, there remained unpaid and owing by Shogren to plaintiff the sum of $555.27, no part of which has been paid.

(5) That Shogren was not a physician or pharmacist during any of said time, nor a dealer employing or keeping a pharmacist in charge of his business, nor a dealer having a shop either within or more than two miles from a drug store; but that during all of said period of time Shogren carried on the business of dealing in and selling the merchandise purchased from him by plaintiff, by traveling in a vehicle from place to place, both within and more than two miles from any drug store, in Itasca and other neighboring counties in Minnesota, and that plaintiff knew these facts.

(6) That during all the time theretofore mentioned "plaintiff counseled, encouraged and urged said Shogren as follows: That he include largely in his said purchases certain drugs and medicines (other than proprietary medicines, and other than those authorized in Minnesota to be sold by general retail dealers) ; that such drugs and medicines were the most important as well as the most profitable products so handled by him; that nearly every family he calls on will need them; that he make special efforts to explain them and their uses, overcome excuses and objections, and get them into nearly every home he visits; that plaintiff would absolutely depend

upon him 'to leave out all you can with those good families every week'; that more such business must be obtained 'if we are to continue with you.' "

(7) "That during each of said years, induced by said counsel and importunities of plaintiff, said Shogren did act in accordance therewith, included in his said purchases substantial quantities of said drugs and medicines, and sought to and did sell same to his customers, at places both within and more than two miles from a drug store, all of which conduct on his part was contemplated and intended by plaintiff as essential to his contract and continuing to be a dealer in plaintiff's products; and that a substantial part of his said indebtedness to plaintiff arose from his so dealing in such drugs and medicines."

The court therefore concluded that plaintiff was not entitled to take anything, but that the defendants should have judgment for their costs and disbursements. Pursuant to these findings, plaintiff having in the meantime moved for amended findings by striking out paragraphs six and seven (quoted above) which the court denied, judgment was rendered for defendants, from which this appeal is taken.

The judge attached a memorandum in which it is stated:

"I am still much in doubt whether the case was properly withdrawn from the jury. There was little, if any, conflict in the evidence, but the inferences or conclusions drawn from it might vary in different minds."

■ Matters that may be reviewed on appeal from a judgment are tersely and adequately stated in Lundblad v. Erickson, 180 Minn. 185, 230 N. W. 473, 474. The court there said, p. 188:

"Generally then this court may review, on appeal from the judgment, any intermediate order involving the merits or necessarily affecting the judgment. Appealable orders, from which no appeal has been taken, and nonappealable orders stand on the same footing in this regard. This court on such appeal may also review the sufficiency of the evidence, rulings made, and proceedings had upon

the trial, when properly raised in the trial court and preserved by exception, or by proper assignment in a motion for a new trial."

■ Plaintiff urges that the court erred in refusing to strike paragraphs six and seven of the findings, taking the view that these findings find no support in the evidence. The bases for these findings are certain letters written by plaintiff's manager to Shogren and some 60 odd orders for goods sent by Shogren to plaintiff. Only one letter is dated in 1931, the year during which the contract here involved was operative. Most of the letters (and there were only six introduced in evidence) are form letters. In some of them Shogren is urged to sell more of plaintiff's products, particularly "cough and cold medicines, salves and ointments, laxatives and pain medicines." As was said by this court in W. T. Rawleigh Co. v. Rutkowski, 168 Minn. 108, 110, 209 N. W. 625, 626, "the letter falls far short of suggesting sales in violation of law." Violation of law cannot be presumed; hence upon the defendants rested the burden of proof to avoid the admitted indebtedness to plaintiff.

The orders sent in by Shogren for goods are lengthy affairs, each being a printed blank 11 inches wide by 25 inches long and containing hundreds of items manufactured and sold by plaintiff and generally referred to as "Rawleigh Products." In the printed order blank these products range all the way from liniments and cough syrup to stock tonics, from louse powder to baking powder, and from rouge to "hog mixture." No testimony was offered as to what items so ordered were drugs and medicines, nor is anything said with regard to whether or not these goods consisted of "patent" or "proprietary" drugs or medicines. Nor does the evidence indicate the proportion thereof to those items admittedly not subject to such criticism. A mere label or name is of doubtful value in determining whether an article is a drug or medicine or something else. Is "cough syrup" medicine, and, if so, what is a "cough drop"? What is a "stock tonic," and wherein does it differ from "hog mixture"? Is either or both a "drug" or "medicine"? The statute upon which defendants rely is drastic. Before its force can be applied there must be reasonably adequate proof of its violation.

No one can be held to liability upon mere conjecture or surmise. The contract is one wherein the plaintiff agrees to sell to Shogren "such reasonable quantities of its products" as the buyer may from time to time order. The nature of plaintiff's business and its methods of disposing of its products are fully set forth in W. T. Rawleigh Co. v. Rutkowski, 168 Minn. 108, 209 N. W. 625, 626. In that case, as in this, defendants sought to avoid liability upon the ground that the goods sold were so sold in violation of law (the prohibition act). In that case the trial court submitted the issues to a jury, and a verdict was returned for plaintiff. On appeal this court said, 168 Minn. 110:

"However the cause was submitted and the verdict was for plaintiff for the full balance of the account, and, since that is for the same amount as a verdict should have been directed, the charge of the court, defining intoxicating liquors, even if not accurate, is not prejudicial."

Nor does the contract indicate that either party contemplated the violation of any law. The principal defendant in his own pleading admits liability for the sum claimed by plaintiff to be due it. As between him and plaintiff there is no issue. Plaintiff made due proof of its account, and there is no proof that plaintiff's case is founded or depends upon an illegal transaction. Bosshard v. County of Steele, 173 Minn. 283, 217 N. W. 354; Disbrow v. Creamery P. M. Co. 110 Minn. 237, 125 N. W. 115; Eagle Roller-Mill Co. v. Dillman, 67 Minn. 232, 69 N. W. 910. There are many other cases bearing upon this subject in this and other jurisdictions, but further citations are not deemed necessary.

Plaintiff took the view that the surety defendants insufficiently pleaded the defense found to exist and sustained by the trial court. Counsel consistently objected to the evidence introduced thereunder. There was no amendment. A mere inspection of the sureties' answer, hereinbefore quoted, sustains the validity of plaintiff's claim. It will be observed that defendants "do not allege any injury or prejudice to themselves resulting from" the contract. (Eagle Roller-Mill Co. v. Dillman, 67 Minn. 232, 234, 69 N. W. 910.)

Their only claim is that "plaintiff's merchandise consists of drugs, medicines * * * which the plaintiff is engaged in selling contrary" to statute, 1 Mason Minn. St. 1927, § 5805, and that plaintiff and Shogren "were engaged at all times from 1928 in selling drugs and medicines to the public" contrary to that section. It will be observed that nowhere in their pleading is there any direct allegation that the goods sold under the terms of the instant contract were such as the statute condemns. The issue should be not what plaintiff generally did but rather what it did in the instant case. As the pleading stands, it is a mere conclusion of law. The facts upon which illegality is based should be pleaded. While pleadings are "but means to an end, the end being the proper administration of the substantive law," yet they "are to be applied and enforced so as to disclose fully and freely the respective claims of the parties and [thereby] facilitate and hasten the trial of issues." 5 Dunnell, Minn. Dig. (2 ed.) § 7498a. The trial judge in his memorandum recognized this situation but suggested that "an amendment should be permitted to accord with the proof." No amendment was offered, and plaintiff did not consent to litigate this issue. When the case is tried again this situation may be met by appropriate application to the trial court for leave to amend. Defendants may have a defense in fact. The present record does not clearly establish that some relief in their behalf is not available.

■ The court took from the jury over plaintiff's objection and exception the right to pass upon fact issues. In this we think there was error. The action is one for the recovery of money only. Whatever fact issues there were should be passed upon by the jury. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 5230, and cases cited. The two challenged findings consist largely of inferences rather than positive conclusions from evidence furnished. The trial judge in his memorandum admits that "there are questions * * * which might properly have been submitted to the jury." For this error alone, even if there were no others, a reversal must be had.

Reversed.