PENN MUT. LIFE INS. CO. v. ASHE.

(Circuit Court of Appeals, Sixth Circuit. May 5, 1906.)

No. 1,445.

NEW TRIAL—DEATH OF JUDGE PENDING MOTION—AUTHORITY OF SUCCESSOR.
Rev. St. § 953, as amended by Act June 5, 1900, c. 717, 31 Stat. 270,
[U. S. Comp. St. 1901, p. 696], provides that, where the trial judge, by reason
of death, sickness, or other disability, is unable to pass on a motion for a
new trial and allow and sign a bill of exceptions, his successor, or any other
judge holding the court, shall do so if the evidence has been taken in
stenographic notes, or if he is satisfied by any other means that he can pass
upon such motion and allow a true bill of exceptions, but that, if he is
satisfied that he cannot, he may in his discretion grant a new trial to the
party moving therefor. *Held* that, where the judge of a Circuit Court died
leaving a pending motion for a new trial undecided, and there was no
record from which his successor could fairly pass upon the motion and al-
low and sign a bill of exceptions, his only authority under the statute was
to grant a new trial.

In Error to the Circuit Court of the United States for the Western
District of Tennessee.

McFarland & Canada, for plaintiff in error.

Malone, Dubose & Riddick, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit upon two policies
for $5,000 each, issued May 2, 1892, by the Penn Mutual Life In-
surance Company on the life of S. A. Rogers. Rogers paid the first
and second premiums due May 2, 1892, and May 2, 1893, borrowed
on the policies the money to pay the third premium due May 2, 1894,
and failed to pay any further premiums. According to the computa-
tion of the company, the reserve resulting from the payment of the
first and second premiums, after deducting the loan which paid the
third premium, was sufficient to carry each policy for 1 year and 121
days; that is to say, until August 30, 1896. Rogers died on January
6, 1898, after the policies, as construed by the company, had expired.
On the 8th of June, 1898, suit was brought on the policies. The case
was heard before Judge Hammond and a jury. After the jury had
heard the testimony, the trial was terminated on December 18, 1899,
by the making of the following agreed entry, under which, as it will
be observed, the court directed a verdict in favor of the plaintiff, but
reserved the questions of law involved for determination on a motion
for a new trial, when, if such motion should be decided in favor of
the defendant, the verdict was to be turned into one for the defendant
by direction of the court:

"This day come again the said plaintiff accompanied by her attorney and
the said defendant by its attorneys and come again also the jury heretofore
impaneled and sworn herein, when the trial of this case was again re-
sumed and the jury having heard the testimony and listened to the argu-
ments of counsel, the parties agree by this record entry that the court
may take the verdict of the jury for the amount due the plaintiff as if upon
a verdict directed by the court in favor of the plaintiff, but on motion for
a new trial, if the court should find the law for the defendant, the verdict

shall be turned into one for the defendant company by direction of the court, neither party to be prejudiced hereby in any right to a writ of error. Whereupon the said jury upon their oaths do say they find the issues herein joined to be in favor of the said plaintiff and against the said defendant to the sum of nine thousand, seven hundred and twenty dollars. It is therefore considered by the court that the said plaintiff, Maggie L.· Ashe, as such executrix, do have and recover of and from the said defendant, the Penn Mutual Life Insurance Company, said sum of nine thousand, seven hundred and twenty dollars and the costs of this suit, for the collection of which execution is hereby awarded. Whereupon the said defendant by its attorneys moves the court for a new trial of this case, which motion is hereby continued for consideration to a subsequent day of the present term."

In accordance with this entry, Judge Hammond took the case under advisement upon the questions of law involved, but never decided them. The motion for a new trial was continued from term to term, until December 17, 1904, when Judge Hammond died. Upon his death, Judge McCall was appointed to fill the vacancy, and on March 1, 1905, the plaintiff moved for execution upon the judgment entered December 18, 1899, and the defendant for a new trial. In support of this motion, the defendant offered the affidavit of counsel showing what had occurred between Judge Hammond and the attorneys for the parties at the time the entry of December 18, 1899, was agreed upon, and the depositions of the officers of the company used on the trial. Judge McCall, sitting as the court below, declined to consider the affidavit and depositions, and on May 4, 1905, overruled the motion of the defendant, sustained that of the plaintiff, and ordered execution to issue upon the judgment. The view taken by the judge below of his authority and duty under the circumstances is sufficiently indicated in the following extracts from his opinion:

"This motion [that made before Judge Hammond] is now pending, and I am asked to grant a new trial of the case. A most perplexing and difficult question is presented. A presiding judge, the successor in office of the trial judge, now deceased, is asked to pass upon a motion for a new trial in a case about the facts of which, as they were permitted to go to the jury, he knows nothing, and just as little about the rulings of the court on objections to testimony offered before the jury. As remarkable as it may at first appear, this want of information as to these things on the part of the presiding judge is strongly urged, and not without some merit, as the reason why this motion should be granted and a new trial awarded. On the contrary, why should not the same thing be urged with equal force as the reason why the presiding judge should do nothing of the kind, but allow the verdict and judgment to stand as rendered?" ·

After commenting on the character of the motion that it raised a question of law and must be regarded as still pending, the court continued:

"However this may be, I am satisfied that, when the verdict and judgment was spread upon the minutes of the court, Judge Hammond was of the opinion that it was correct, both upon the facts and the law of the case; and, since he did not see proper to change it under the motion for more than six years, it is persuasive, if not conclusive, that he was content to let it stand. I cannot bring myself to conclude that I have any authority under the law and facts now presented to set the verdict and judgment aside at this late day, when I know nothing, and can know nothing, of the trial of the case."

Without considering the affidavit offered by counsel for the defendant company, and confining ourselves to the agreed entry of December 18, 1899, it is obvious that the verdict and judgment then entered was a provisional one; it recognized there were certain questions of law raised during the trial which should receive the careful consideration of the court, and a verdict for the plaintiff was directed upon the express agreement that the court, upon a motion for a new trial, would consider and decide these questions, preserving to each party its right of review. If it should find the law for the defendant, the verdict was to be turned into one for the defendant. Neither party was to be prejudiced by the entry in its right to a writ of error. From such an entry, no inference could be drawn that the court, after consideration, had decided the questions of law in favor of the plaintiff. The plain statement was that it had not decided them, and the agreement was that it should decide them before the judgment was to be deemed conclusive, so that the defendant, if the court overruled its motion for a new trial, might take his exceptions, and not be prejudiced in his right to a writ of error. If this entry had not been made, and the court had been compelled to charge the jury, the defendant by proper exceptions might have reserved the legal questions it deemed important, and thus have preserved its right of review. To hold that, by the delay of the judge in passing upon the motion for a new trial, the defendant has been deprived of its right of review, is to say that without any fault on its part it lost its day in court, and must be deprived of its property without due process of law.

Before the passage of the act of June 5, 1900, amending section 953, it was the settled rule in the courts of the United States that the signing of a bill of exceptions is a judicial act, which can only be performed by the judge who sat at the trial, or by the presiding judge, if more than one sat. Malony v. Adsit, 175 U. S. 281, 20 Sup. Ct. 115, 44 L. Ed. 163; Western Dredge & Imp. Co. v. Heldmaier, 111 Fed. 123, 49 C. C. A. 264. By the amendment referred to, section 953 (1 Comp. St. U. S. 1901, p. 696), was supplemented so as to read as follows:

"Section 953. That a bill of exceptions allowed in any cause shall be deemed sufficiently authenticated if signed by the judge of the court in which the cause was tried, or by the presiding judge thereof if more than one judge sat at the trial of the cause, without any seal of the court or judge annexed thereto. And in case the judge before whom the cause has heretofore been or may hereafter be tried is, by reason of death, sickness, or other disability, unable to hear and pass upon the motion for a new trial and allow and sign said bill of exceptions, then the judge who succeeds such trial judge, or any other judge of the court in which the cause was tried, holding such court thereafter, if the evidence in such cause has been or is taken in stenographic notes, or if the said judge is satisfied by any other means that he can pass upon such motion and allow a true bill of exceptions, shall pass upon said motion and allow and sign such bill of exceptions; and his ruling upon such motion and allowance and signing of such bill of exceptions shall be as valid if such ruling and allowance and signing of such bill of exceptions had been made by the judge before whom such cause was tried; but in case said judge is satisfied that owing to the fact that he did not preside at the trial, or for any other cause, that he cannot fairly pass upon said motion, and allow and sign said bill of exceptions, then he may in his discretion grant a new trial to the party moving therefor."

The judge below seemed to be of the opinion that, although, as he stated in his opinion, he knew nothing about the facts of the case as they were permitted to go to the jury, and just as little about the rulings of the court on objections to the testimony offered to the jury, in short, knew nothing, and could know nothing, of the trial of the case, nevertheless he had authority, under section 953, to pass upon the motion for a new trial, and, as a consequence, allow and sign a bill of exceptions. In this we think he erred. The general rule, enforced by the weight of authority in this country and England, is that where a party, without laches on his part, loses the benefit of his exceptions through the death or illness of the judge, a new trial will be granted. Hume v. Bowie, 148 U. S. 245, 253, 13 Sup. Ct. 582, 37 L. Ed. 438, and cases cited. Section 953, as amended, enforces this just doctrine by providing that where the trial judge, by reason of death, sickness, or other disability, is unable to hear or pass upon a motion for a new trial, and allow and sign a bill of exceptions, his successor shall do so if the evidence has been or is taken in stenographic notes, or if he is satisfied by any other means that he can pass upon such motion, and allow a true bill of exceptions; but in case such successor is satisfied that owing to the fact that he did not preside at the trial, or for any other cause, he cannot fairly pass upon said motion and allow and sign said bill of exceptions, he may in his discretion grant a new trial to the party moving therefor. This, we take it, is authority to the successor, although he did not preside at the trial, to pass upon the motion for a new trial, and allow and sign the bill of exceptions, only in case he is furnished with the information, either by stenographic notes of the evidence, or otherwise, which will enable him to do so fairly and intelligently; and, if he cannot pass fairly and intelligently upon the questions of fact and law presented by the motion for a new trial, he is given authority, according to the general rule, to grant a new trial.

Since the judge below conceded he could not pass fairly upon the motion for a new trial, and allow and sign a bill of exceptions, the only authority he could exercise, under the section, was to grant a new trial.

The judgment is reversed, and the case remanded, with instructions to grant a new trial.