JOSEPH ZYWIEC v. CITY OF SOUTH ST. PAUL
AND OTHERS.
THEODORE PIEKARSKI AND ANOTHER v. SAME.[1]

April 13, 1951.

Nos. 35,406, 35,407.

[1]Reported in 47 N. W. (2d) 465.

*Lewis C. Shepley,* for appellants.
*Fred K. Gage* and *John R. Kelly,* for respondents.

KNUTSON, JUSTICE.

Appeals from orders denying alternative motions for judgment notwithstanding the verdicts or for a new trial.

Separate actions were originally commenced by each of the plaintiffs against the city of South St. Paul, a municipal corpora-

tion, and the other defendants, who constitute the South St. Paul board of aeronautics and the manager of the airport here involved. The issues are the same in both cases, and they were tried together. Similarly, they have been considered together here. Liability has been found to exist only against the city, and for all practical purposes the trial proceeded against it alone, so the city will be referred to herein as defendant.

The facts, insofar as they affect the decision of this case, are that in 1939 a private airport was established lying some 1,320 feet south of the south border of the city of South St. Paul and contiguous to the west line of the village of Inver Grove. In 1942, this airport was taken over by the United States government for use by the navy as a primary training field. The navy acquired additional ground within the village limits of Inver Grove and also leased the property between the old field and the city limits of South St. Paul. On the original site, the navy laid out and improved a landing circle, which consisted of a circular area about 1,500 feet in diameter. This landing circle was surfaced with black top. On the leased area to the north of the black-top circle, the navy laid out a grass-landing circle of about the same diameter as the black-top circle. On the land acquired within the village limits of Inver Grove, hangars were erected with a parking apron in front of them. The result was that the finished field was composed of two landing circles, with the hangars and parking apron about midway between them and extending out to the east so as to form a T-shaped area.

Plaintiff Zywiec originally owned 14 acres of land east of and contiguous to the area of the field on which the black-top circle is located. This tract runs 330 feet east and west and about 1,660 feet north and south. It extends from the tract on which the hangars and apron are located all the way to the south end of the field. In 1947, Zywiec acquired eight additional acres, which extended east along the south side of the apron, so that thereafter his farm formed an L-shaped tract with the land which he had formerly owned. His land has been used for a residence and for truck farm-

ing.  His house is located about in the middle of his tract east and west on the extreme south end thereof.

Plaintiffs Piekarski purchased ten acres of land in 1937 and built a home with other outbuildings thereon.  This tract lies immediately east of that owned by Zywiec.  In 1947, an additional ten acres were purchased to the east of the original holding.  The 20 acres fit into the inside of the L formed by Zywiec's holdings.  The Piekarski house is also on the south end of the tract and near the center of the original ten-acre tract.  The Piekarski land also is used for truck farming.  Bordering the south side of the tracts of both plaintiffs is Bushnell street, which, if extended west, would run past the south side of the airport.

In 1945, the navy ceased operating planes in and out of the airport.  In the spring of 1946, the entire airport tract was leased to the city of South St. Paul for a period of 20 years, the lessor reserving the right to cancel the lease on 90 days' notice.  The city has since operated the airport through the medium of an aeronautical board appointed by the mayor and approved by the council.  This board in turn hires a manager, who is actively in charge of the field.  The hangars are leased to what are called "fixed base operators," who have sales and service agencies and who store, service, and operate planes.  They also operate flying schools to train fliers.  The city owns and operates gasoline pumps, from which gasoline is sold to all planes using the field.  The city does not own any planes.

Management of the field is vested in the aeronautical board.  It has established definite flight patterns, so that planes landing or taking off will follow a prescribed course in order that they may avoid colliding with each other.  In either landing or taking off, a pilot on this field finds it possible to go directly into the wind because of the fact that there is a landing circle instead of the ordinary landing strip customarily found in airports.  The circle does not restrict the direction in which he may fly as would a landing strip.  The black-top circle runs to within 90 feet of the east edge of the airport, which is also the west edge of the land owned by

Zywiec. The east edge of the black top is 505 feet from the nearest edge of the land owned by the Piekarskis.

When the wind is from the east, planes take off toward the east and fly over plaintiffs' property at low altitude along a flight pattern established by defendant until they are able to attain the desired altitude. When the wind is from the west, planes land toward the west and, in so doing, glide over plaintiffs' land at low altitudes in order to reach the proper distance from the ground when approaching the landing circle. The evidence is conflicting as to the number of planes flying over plaintiffs' property, but the jury and court could find that a great many planes flew over at extremely low altitudes. Piekarski testified, for instance, that on June 15, 1949, and on June 26 between 8 a. m. and 10 p. m., 73 planes in the process of landing flew directly over his strawberry pickers as low as 15 feet. The jury could find that planes flew within 10 or 15 feet of the tops of plaintiffs' houses and the trees. At times, planes have either overshot the landing field and landed on plaintiffs' land or had their wheels touch plaintiffs' land prior to reaching the landing circle. It appeared also that lights from planes coming in at night would shine in plaintiffs' houses, and it would appear at times to the occupants that the planes were going to hit the house. Horses have been frightened to such an extent that they have run away, and it has become impossible for plaintiffs to raise chickens on their farms because of the fact that planes flying at low altitudes would cause the chickens to become so frightened that they would crowd together and smother each other.

Based substantially on these facts, separate actions were commenced by the respective plaintiffs for injunctive relief and also to recover damages for injury to or taking of their land. Demurrers interposed to the complaints on the ground that they did not state facts sufficient to constitute causes of action were overruled. In overruling the demurrers, the court certified the questions raised by the demurrers as important and doubtful. Defendant chose not to appeal, but interposed answers denying liability.

Thereafter, the actions came on for trial before the Honorable Charles P. Hall and a jury. The jury returned a verdict for defendant. Plaintiffs moved for a new trial. Thereafter, the court made findings of fact, conclusions of law, and order for judgment finding that defendant city had deprived plaintiffs of the partial use and enjoyment of their property and that plaintiffs were entitled to recover damages. Concurrently with such findings, Judge Hall issued his order granting a new trial on the question of damages alone. Judgment was entered pursuant to such findings. As a preamble to the findings of fact, conclusions of law, and order for judgment, Judge Hall stated:

"The above entitled action came on for trial * * * at the court-house in the City of Hastings, Minnesota, *it being understood and agreed that the issue of damages would be tried before the jury and the other issues, including the issues of law, by the Court without a jury,* * * *." (Italics supplied.)

No motion was ever made for amended findings or a new trial by defendant after the making and filing of such findings of fact. No appeal was taken from the order granting a new trial on the question of damages or from the judgment. Thereafter, the case came on for trial on the question of damages before the Honorable W. A. Schultz. He submitted the case to a jury on the theory that the question of liability had been determined by Judge Hall and that the only question for the jury was a determination of the amount of damages which plaintiffs were entitled to recover. In the second trial, plaintiffs in each case recovered a verdict for $2,500. These appeals followed denial of defendant's alternative motions for judgment notwithstanding the verdicts or a new trial.

It is the contention of defendant that the complaints contain two separate causes of action, one in equity seeking injunctive relief, and the other being an action for damages; that Judge Hall tried the action for damages to the jury, resulting in a verdict for defendant, and thereafter tried the equitable action and made findings denying injunctive relief; that his order granting a new trial was in effect an order setting aside the verdict of the jury and

granting a new trial of all the issues tried by the jury; and that consequently it was error to instruct the jury in the second trial that the issue of liability had been determined by Judge Hall.

It is impossible so to construe Judge Hall's findings and order. After stating that all issues except the issue of damages were tried by the court by agreement, he found the facts on which he based liability. He denied injunctive relief for the reason that "plaintiff has an adequate remedy at law under a new trial and that an injunction might interfere with the public interest." We have no settled case or bill of exceptions covering the first trial, so we must assume that the findings are sustained by the evidence. His conclusions of law, based on his findings of fact, are in part:

"11.

"That flights by aircraft have been at such low altitudes as to interfere with the use to which the land or the space above the land was put and was so conducted as to be imminently dangerous or damaging to plaintiffs or property lawfully in or upon the land in the then existing use thereof.

"12.

"That the property of plaintiffs has been taken for public use and plaintiffs have been deprived of partial use and enjoyment of the same without adequate and just compensation.

"13.

"That plaintiffs are entitled to recover from the City of South St. Paul compensation for the taking of such property.

"14.

"That plaintiffs may and should obtain by the new trial on the issue of damages adequate and just compensation; which new trial is being concurrently herein granted."

Judge Hall's order is in part as follows:

"WHEREFORE It Is HEREBY ORDERED:

"That the plaintiff recover from the defendant City of South St. Paul such damages as compensation of the taking and interference with plaintiff's property in such amount as may be determined in

a new trial which is being concurrently granted to plaintiff on the issue of damages by an order concurrently made."

His order for a new trial, issued concurrently with his findings, reads as follows so far as here material:

"It Is Hereby Ordered That said motion be and the same hereby is granted and the verdict of the jury is hereby vacated and a new trial of said action granted, said new trial to be on the issue of damages only, that being the issue submitted to the jury, issues of law being for trial by the court. This order is based on the ground that the verdict of the jury is not justified by the evidence and is contrary thereto."

A finding of liability is a prerequisite to the court's jurisdiction to make an order granting a new trial on the question of damages alone. 66 C. J. S., New Trial, § 11e(2); Rossman v. Newbon, 112 N. J. L. 261, 170 A. 230.

The procedure followed in this case to determine liability is, to say the least, unusual. We do not commend the procedure to the bar for future use. This is not a case in which all issues were submitted to the jury and plaintiff prevailed on the issue of liability, but the damages were found to be inadequate. Here, we have the anomalous situation of a jury verdict for defendant, followed by a decision of the court against defendant after a motion by plaintiffs for a new trial, in which decision the court states that it was agreed that all issues, except that of damages, should be tried by the court. No motion for judgment notwithstanding the verdict was made. The court granted the motion for a new trial on the issue of damages alone and concurrently therewith made findings that defendant was liable, contrary to the jury's verdict for defendant. If the question of liability was submitted to the jury, it is doubtful that the trial court could thereafter make findings contrary to that of the jury, at least in the absence of a motion for judgment notwithstanding the verdict. Judgment notwithstanding may not be granted on a motion for a new trial only. Kernan v. St. Paul City Ry. Co. 64 Minn. 312, 67 N. W. 71; Crane v. Knauf, 65 Minn. 447, 68 N. W. 79; Netzer v. City of Crookston, 66 Minn. 355,

68 N. W. 1099. Had a motion for judgment notwithstanding the verdict been made, it might be possible to treat the findings of the court as an order granting such motion. In the absence of such motion, we cannot so consider it. The difficulty in this case is that the settled case contains no part of the original trial, except the findings of the court and the order granting a new trial on the issue of damages only. We have no way of knowing what was submitted to the first jury, except such information as we might gather from the court's statement in its order granting a new trial. The findings state on their face that it was agreed and understood that all issues except the issue of damages should be tried to the court. Of course, if that is so, the findings are now final. No appeal was taken from the order of the court granting a new trial on the issue of damages alone, although such order is ordinarily appealable. Lundblad v. Erickson, 180 Minn. 185, 230 N. W. 473; Morton v. Griggs, Cooper & Co. 162 Minn. 436, 203 N. W. 218. Nor was any effort made by defendant to secure a review or modification of the court's findings. Had the court, pursuant to an agreement between the parties, made findings of fact on all issues except the amount of damages prior to the submission of this issue to the first jury, and thereafter set aside an adverse or inadequate verdict of the jury fixing the amount of damages and granted a new trial on the issue of damages only, it could hardly be doubted that the parties would be bound by the findings of the court on the issue of liability in the absence of a review thereof. On the second trial on the issue of damages alone, questions involving the correctness of the court's findings on the issue of liability could not be raised, nor could they be raised on a motion for a new trial after the second trial on the sole issue of damages. The same rule should prevail here. When the jury returned a verdict for defendant, it had prevailed, and nothing more was required of it. However, when the court, after a motion for new trial by plaintiff, made findings adverse to the defendant, it could take appropriate steps to have the court's action reviewed and, if improper, set aside, or defendant could acquiesce in what the court had done and be bound by it. It did nothing to

secure a review.  It must therefore be held that defendant acquiesced in the court's finding of liability and is now bound by it.

■ In the absence of a bill of exceptions or settled case establishing the contrary, it is presumed that the orders of the trial court are regular and that its orders are sustained by the trial proceedings.  Eklund v. Martin, 87 Minn. 441, 92 N. W. 406; Vaughan v. McCarthy, 63 Minn. 221, 65 N. W. 249; Chesley v. Mississippi & Rum River Boom Co. 39 Minn. 83, 38 N. W. 769.

■ An order of the district court, where it has jurisdiction of the person and subject matter, is conclusive unless set aside upon review by the appellate court.  If such order is not reviewed, but is acquiesced in by the parties, it is to be treated as the law of the case and is final.  1 Dunnell, Dig. § 398; Esch v. White, 82 Minn. 462, 85 N. W. 238, 718.

■ Where a new trial is granted as to all issues, the former trial is wiped out, and the parties are in the same position as if there had been no trial.  Storey v. Weinberg, 226 Minn. 48, 31 N. W. (2d) 912.  However, where a new trial is granted as to damages alone, the remainder of the original decision stands and is as conclusive, in the absence of an appeal, as any other decision from which there is no appeal.  The only part of the decision which is set aside in such case is that relating to the sole issue upon which a new trial is granted.

■ On an appeal from a judgment after a new trial on the question of damages alone, we may review any intermediate orders involving the merits  or necessarily affecting the judgment entered after a second trial. M. S. A. 605.09.  That is true of intermediate orders which are appealable, even though the time for appealing therefrom has expired before the appeal from the judgment.  Mower v. Hanford, Thayer & Co. 6 Minn. 372 (535) ; Lundblad v. Erickson, 180 Minn. 185, 230 N. W. 473.  That is not true where a new trial is granted on all the issues.  In the Lundblad case, we said (180 Minn. 187, 230 N. W. 474) :

"* * * It is the rule that, where a new trial of all the issues is granted, the first trial is wholly set aside and the case stands as

if there had been no trial. Upon an appeal from the judgment rendered as a result of the second trial, there can then be no review of the proceedings at the first trial or of the order granting it. * * * But that rule does not apply where a new trial is granted on only one issue or a part of the issues in the case. The judgment after the second trial then rests upon the issues determined at both trials. * * * In that situation the appeal from the judgment, *with a proper settled case,* brings up for review the entire record of both trials, including intermediate motions and orders as part of the record, except that as to the amount of damages or as to damages being excessive we must look to the evidence and record of the second trial." (Italics supplied.)

█ The rule permitting a review of intermediate orders on an appeal from a judgment does not prevail on an appeal from an order. 1 Dunnell, Dig. § 396. An appeal from an order brings up for review only the regularity of those things which were involved in the order. It does not bring up for review the regularity of prior orders or rulings of the court. Here, the second trial involved only a determination of the amount of damages. Nothing else was before the court. Nothing else was submitted to the jury. The motion for a new trial after a verdict for plaintiff upon the second trial could reach only that which was before the court in the trial itself. All the court could have done after the second trial would be to grant a new trial on the question of damages, which was all that was before it. Similarly, that is all that is before us on appeal from the order denying the motion for a new trial. Consequently, we cannot on this appeal consider questions which were determined by the court in the former trial and which have not been reviewed or set aside.

The result here is that the court's findings stating that it was agreed and understood by the parties in the first trial that the court should try all questions but the question of damages, after which the court made findings holding that the defendant city was liable, must be held to be conclusive on this appeal. It necessarily follows that we cannot now consider assignment of error No. 1,

which states that the court erred in failing to sustain defendant's objection to the introduction of any evidence on the ground that the complaint did not state a cause of action. That question was determined by the court in the first trial, from which no appeal has been taken. Even on an appeal from the judgment in the absence of a settled case or bill of exceptions, the sufficiency of the pleadings cannot be raised. The only question that can be raised on such appeal is the sufficiency of the findings to support the judgment. If the facts found are not within the issues made by the pleadings, it will be presumed that such facts were litigated by consent. Peach v. Reed, 87 Minn. 375, 92 N. W. 229; Union Central L. Ins. Co. v. Page, 190 Minn. 360, 251 N. W. 911; Schaefer v. Thoeny, 199 Minn. 610, 273 N. W. 190.

■ Assignments of error Nos. 2, 3, and 4 state that the court erred in allowing certain named witnesses to testify to the rental value of the premises with no airport there, it being defendant's contention that the airport was developed by the United States government and that the city could not be chargeable for damages caused by its existence as an airport. It is true that defendant cannot be charged with damages resulting from the existence of the airport. Evidence on this erroneous theory was admitted, but later plaintiffs had the witnesses testify as to the damages caused by the operation as distinguished from the existence of the airport. The case was submitted to the jury on that theory. The court instructed the jury that the measure of damages was the diminished value of the use of their property, which was defined as follows:

"* * * This diminution in the reasonable rental value of the property is to be ascertained by you determining the difference, if any, between the reasonable rental value of plaintiffs' premises with the existing airport in operation by the city, and the reasonable rental value of the premises with the airport there but not in operation."

No exception was taken to that charge, nor is it challenged here. Under these circumstances, whatever error was committed in the admission of evidence on the wrong theory was cured by the court's

instructions, and the jury could not possibly have been misled by such evidence.

Assignments of error Nos. 5 and 6 are based on the contention that the court erred in instructing the jury that Judge Hall had determined the issue of liability. We have already disposed of those contentions above.

■ In the only other assignment which requires our consideration, defendant contends that the verdicts are based on passion and prejudice. This contention is based solely on the fact that the jury returned the same verdict for each of the plaintiffs. The Piekarski land was separated from the landing field by the width of the land of Zywiec. Defendant contends that the damage to the Piekarski land could not possibly equal that to Zywiec's land. The evidence is that planes flew low over both tracts and that the houses of both plaintiffs were subjected to the same interference, or substantially such. While it seems probable that the Zywiec land could be damaged more than that of the Piekarskis, the evidence will sustain the verdict in each case. There is nothing in the record to indicate an appeal to passion or prejudice. We do not believe that the similarity of the verdicts is sufficient, standing alone, to compel such finding.

Whether the questions defendant seeks to raise here may be raised on an appeal from the judgment, presented on an adequate settled case, we need not now determine. It is clear that on the record before us the order of the trial court must be affirmed.

We are mindful of the fact that a determination of the rights of property owners contiguous to or near airports and the rights of airports to permit flights over such property is of tremendous importance to municipalities and others interested in developing aeronautics. We would prefer to decide the case on its merits. In Hospes v. Northwestern Mfg. & Car Co. 41 Minn. 256, 261, 43 N. W. 180, 182, speaking through Mr. Justice Mitchell, we said:

"* * * This court is always desirous that appeals should be determined if possible on their merits; but to enable us to do so

they must be brought here in a proper way, and with some regard to orderly practice."

That is as true today as it was then. A decision in this case on the merits would, at best, be obiter dictum. We do not believe that the development of aeronautics in its infancy should be saddled with a decision of such little value on such an important question. See, Winona & St. P. R. Co. v. Denman, 10 Minn. 208 (267).

Affirmed.

[1]Reported in 47 N. W. (2d) 428.