RUSTAN O. THAYER, AS RECEIVER OF GENERAL
WOODWORKING, INC., v. HARRY DUFFY, ADMINISTRATOR
*c. t. a.* OF ESTATE OF GEORGE A. MOORESIDE.
GLADYS SCOTT AND OTHERS, ADDITIONAL
DEFENDANTS, APPELLANTS.
ADOLPH CARLSON AND ANOTHER, ADDITIONAL
DEFENDANTS, RESPONDENTS.[1]

October 16, 1953.

No. 35,934.

---

[1]Reported in 63 N. W. (2d) 28.

*Hall, Smith & Hedlund,* for appellants Gladys Scott and others.
*Henry F. Simons,* for appellant Harry Duffy.
*John J. Stoller* and *Maurice A. Hessian,* for respondents.

DELL, CHIEF JUSTICE.

Appeal from a judgment determining (1) the rights of General Woodworking, Inc., and its receiver, as plaintiff, under a contract for the purchase by plaintiff of a woodworking plant, including certain real and personal property, from George A. Mooreside, defendant, who died subsequent to the commencement of the proceedings; (2) the rights of defendants Adolph Carlson and William Winsor in and to the property of the plant under an alleged partnership agreement made between them and George A. Mooreside prior to the latter's contract with plaintiff; (3) the rights of defendants May Mooreside, as widow, and Helen Mooreside Julyan and Reagh Mooreside, as children, of George A. Mooreside, in and to his interest in the real and personal property comprising such plant; and (4) the rights of Harry S. Duffy, as administrator *c. t. a.* of the estate of George A. Mooreside, to such property and certain fees paid him pursuant to probate court order for his services as administrator of George A. Mooreside's estate. This is also an appeal from findings and an order adjudging Duffy, administrator as aforesaid, in contempt for failing to turn over such fees to Carlson and Winsor.

On April 21, 1947, the action was instituted by General Woodworking, Inc., against George A. Mooreside for specific performance of a contract for purchase dated June 17, 1946.

On May 10, 1947, defendant George A. Mooreside died, and on that date John G. Erickson was appointed by the probate court of Anoka county as special administrator of his estate. On May 29, 1947, he was substituted as defendant in the action. On June 12, 1947, the will of George A. Mooreside was admitted to probate. On June 22, 1947, Erickson was discharged as special administrator, and on July 22 Duffy was appointed as administrator *c. t. a.* of

the estate. On September 29, 1947, Duffy, as administrator *c. t. a.*, was substituted as defendant in the action. All real and personal property and all other assets of the woodworking plant were turned over to him as such administrator, and pursuant to directions of the probate court of Anoka county he continued operation of the plant for some time thereafter.

On May 3, 1948, Rustan O. Thayer was appointed receiver of plaintiff, and on July 8, 1948, substituted for plaintiff in the action.

On January 14, 1949, May Mooreside, widow, and Helen Mooreside Julyan and Reagh Mooreside, children, of George A. Mooreside, were made additional defendants in the action so their rights in the property might be determined.

On May 26, 1949, the action was combined for trial with another action then pending wherein Carlson and Winsor, as plaintiffs, sought an adjudication against Duffy, as administrator aforesaid, to the effect that as co-partners under an agreement with George A. Mooreside they were each the owners of an undivided one-third of the real and personal property and other assets of the woodworking plant. Trial of the combined actions commenced September 12, 1949, and continued until October 31, 1949. A jury was waived.

On December 6, 1949, the trial court made findings, conclusions, and order for judgment wherein it determined in substance the following:

(1) That George A. Mooreside was the owner of the real estate upon which the woodworking plant was located and that at the time of his death it comprised his homestead.

(2) That the contract, for which specific performance was sought by plaintiff, was invalid but that, since plaintiff had applied thereon the sum of $25,000, the reasonable value of certain lumber furnished by it and used in conjunction with the operation of the plant, it should have judgment against Duffy, as administrator *c. t. a.*, for the amount thereof with interest and costs.

(3) That no partnership ever existed between George A. Mooreside and Carlson and Winsor.

In a memorandum attached to and made a part of these findings, the trial court stated:

"* * * no written contract [of co-partnership between Carlson, Winsor, and Mooreside] has been produced. * * * plaintiffs [Carlson and Winsor] testified that, although one was drawn and signed, some time in the latter part of July, 1940, by all three parties involved, neither of these plaintiffs was given a copy of it and neither saw it after they claim it was signed. No such paper has been found after diligent search among the Mooreside records and papers."

On December 22, 1949, on motion of Carlson and Winsor, the trial court vacated its original findings and order for judgment and made new ones wherein it determined:

(1) That in July 1940 Carlson, Winsor, and George A. Mooreside entered into a partnership agreement for the conduct and operation of the woodworking plant, whereunder each was to own an undivided one-third interest therein.

(2) That thereafter the co-partnership purchased with partnership funds the real and personal property used in conjunction with the plant, including a house and garage occupied by George A. Mooreside at the time of his death; that without the consent of his co-partners Mooreside caused title to all of the real property owned by the co-partnership to be placed in his name; that at the time of his death title thereto was thus held for the benefit of the partnership; and that his residential use of the premises was by permission of the partnership, and that no part thereof constituted his homestead.

(3) That possession of Duffy, as administrator, of the real and personal property and other assets comprising the plant, and his operation thereof, was without the consent of Carlson and Winsor; that the co-partnership terminated upon the death of George A. Mooreside, and thereafter his surviving partners Carlson and Winsor were entitled to possession of all partnership property for the purpose of winding up its affairs; and that they were entitled to

an accounting from said Duffy as to his operation of the business subsequent to his appointment as administrator.

(4) That the contract, for which specific performance was sought in the action, was made without the knowledge and consent of Carlson and Winsor and had never been ratified by them and that it was invalid insofar as their interests in the assets of the plant were concerned.

(5) That under the invalid contract plaintiff had delivered to George A. Mooreside lumber of the reasonable value of $25,000, but that there was no evidence to establish that the partnership ever received the whole or any part of it, and that the estate of George A. Mooreside was unjustly enriched by virtue thereof.

(6) That Duffy, as administrator *c. t. a.*, had notice of the existence of the claims of Carlson and Winsor subsequent to October 1947, the date they commenced their action.

Based thereon, the court ordered:

(1) That Duffy, as administrator, surrender and deliver to Carlson and Winsor possession and control of all property, books, and records of the plant which he then had in his possession.

(2) That Carlson and Winsor take full possession thereof for the purpose of winding up the affairs of the partnership.

(3) That Duffy, as administrator *c. t. a.*, render unto them a full and true account of his operations of the partnership.

(4) That plaintiff have judgment against Duffy, as administrator *c. t. a.* of the estate, for the sum of $25,000, with interests and costs therein.

In a memorandum attached to these subsequent findings and order, the trial court stated:

"The present findings and conclusions * * * necessarily involve a change of view by the Court with respect to the existence of the contract of partnership. After a careful resurvey of the whole matter * * * the Court is of the opinion that such contract was made in accordance with the testimony of * * * Winsor and Carlson * * * and is constrained to hold that it was in error in de-

ciding that no partnership * * * existed. In reaching that conclusion in the previous findings, the Court overlooked undisputed evidence that all of the * * * property * * * was bought * * * and paid for out of the partnership funds long before any homestead rights could have arisen out of the occupation of one of the buildings by the decedent * * *."

Notice of the order and amended findings of December 22, 1949, was duly served upon defendant administrator on January 3, 1950.

On December 31, 1949, prior to the expiration of the time upon which a motion for new trial on the minutes might be made, the Honorable Arthur W. Selover, the judge who had heard the matter and made findings thereon as described, retired. He was succeeded by the Honorable Rolf Fosseen as one of the judges of the district court for Hennepin county. Subsequent proceedings were heard before Judge Fosseen.

On January 12, 1950, and within 15 days of notice of the filing of the amended finding and order of December 22, 1949, Duffy, as administrator, together with other beneficiaries or heirs at law of George A. Mooreside, *upon the minutes of the court* moved for a new trial on the following grounds:

(1) That the trial court had erred in denying their motion to require Carlson and Winsor to submit in evidence their individual income tax returns for the period during which they claimed they were partners.

(2) That the trial court erred in receiving the testimony of Carlson and Winsor relative to conversations held by them with George A. Mooreside prior to his death.

(3) That the trial court erred in receiving or rejecting certain exhibits offered in evidence by the parties.

(4) That the findings of fact made and filed December 27, 1949, were not justified by the evidence.

On January 27, 1950, this motion was heard. At that time attorneys for plaintiff and for Carlson and Winsor appeared specially and objected to the jurisdiction of Judge Fosseen to hear the mo-

tion upon the minutes in that he had not heard the evidence upon which such minutes were based. Judge Fosseen sustained the special appearance and on January 31, 1950, made his order dismissing the motion and on February 1, 1950, ordered proceedings stayed until March 31, 1950. On March 30, 1950, upon motion of attorneys for Duffy, as administrator, the trial court extended the stay to and including May 15, 1950, because of his inability to obtain a transcript of the proceedings prior thereto.

On March 31, 1950, attorneys for plaintiff and attorneys for Carlson and Winsor moved for an order vacating the stay, and for a further order adjudging defendant Duffy, as administrator, in contempt because he had paid to the court reporter the sum of $500, from funds held by him as administrator, for the purpose of obtaining a transcript of the testimony upon which to base his motion for a new trial and because he had failed to turn over to Carlson and Winsor the real and personal property constituting the assets of the plant as directed by the court on December 22, 1949.

On May 10, 1950, Judge Fosseen made his order in substance determining:

(1) That Duffy, as administrator *c. t. a.*, on advice of counsel but contrary to the order of December 22, 1949, had disbursed the sum of $500 from funds constituting partnership property to the court reporter and that he had not delivered to Carlson and Winsor as surviving partners the assets of the plant as requested by such order.

(2) That he forthwith surrender and deliver to Carlson and Winsor as surviving partners the aforesaid sum of $500 and the immediate possession and control of all real and personal property belonging to the plant as provided in the order of December 22, 1949.

(3) That the action be placed on the calendar for the accounting by Duffy, as administrator, as ordered and directed December 22, 1949. The stay to May 15, 1950, otherwise remained in effect.

Pursuant to this order Duffy, as administrator *c. t. a.*, secured the $500 paid the court reporter and delivered it to Carlson and

Winsor. Likewise, he turned over to them all of the other assets of the plant.

In October 1950 the court reporter died. Prior thereto, no funds existing in the estate, Duffy was unable to order or procure a transcript.

On October 9, 1950, and at intervals thereafter up to and including June 5, 1951, proceedings with reference to the accounting by Duffy, as administrator, were heard by Judge Fosseen. Findings of fact, conclusions, and order for judgment were made with reference thereto in substance as follows:

(1) That upon the dissolution of the partnership on the death of George A. Mooreside on May 10, 1947, it had on hand cash and other assets as follows:

| | |
|---|---|
| Cash | $ 6,102.76 |
| Real estate | 39,500.00 |
| Machinery | 7,500.00 |
| Lumber and other materials | 7,000.00 |
| Accounts receivable | 8,000.00 |
| Total | $ 68,102.76 |

and that the liabilities of the partnership at that time were the sum of $530.64, making its net worth the sum of $67,572.12, the share of each partner therein the sum of $22,524.04.

(2) That on July 22, 1947, Duffy took control of the assets of the plant as administrator of the estate of George A. Mooreside, at which time they were comprised of the following:

| | |
|---|---|
| Cash | $ 3,495.71 |
| Real estate | 39,500.00 |
| Machinery | 7,500.00 |
| Lumber and materials | 7,571.40 |
| Accounts receivable | 2,214.00 |
| Total | $ 60,281.11 |

(3) That all actions of said Duffy, as administrator *c. t. a.*, having been taken without the consent of Carlson and Winsor, were unauthorized.

(4) That while said Duffy was thus in control of the partnership property, certain windstorms and fires took place which occasioned destruction of part of the property comprising the plant, for which said Duffy, as administrator, received the total sum of $9,326.15 from insurance policies covering the same.

(5) That the cash received by said Duffy, as administrator, from the insurance, from the collection of accounts receivable, and from the sale of partnership lumber, materials, and equipment totalled the sum of $25,334.86.

(6) That from such funds said Duffy had disbursed for insurance premiums and taxes sums totalling $3,388.63, which were the only disbursements made for the benefit of the partnership.

(7) That other disbursements made by him, including the sum of $3,725 paid to himself for services as administrator, were unauthorized by the surviving partners and did not constitute valid charges against partnership assets.

(8) That on May 17, 1950, pursuant to the order of May 10, 1950, Duffy surrendered to Carlson and Winsor cash, real estate, and machinery as follows:

| | |
|---|---:|
| Cash | $ 8,725.99 |
| Real estate | 22,138.85 |
| Equipment and machinery | 3,905.00 |
| Lumber and miscellaneous materials | 100.00 |
| Total | $ 34,869.84 |

(9) That as of May 10, 1947, each of the copartners was entitled to the sum of $22,525.04, lessened by each partner's share of the $3,388.63 previously referred to, so that the net share of each equalled $21,395.50.

(10) That Carlson and Winsor were entitled to interest at the rate of six percent per annum from May 10, 1947, to May 17, 1950, to

be charged against George A. Mooreside's share of the partnership assets.

(11) That all partnership assets turned over to Carlson and Winsor be sold and converted into cash, and that Duffy, as administrator, forthwith repay to Carlson and Winsor, as surviving partners, the sum of $3,725 retained by him for services as above described.

(12) That from the proceeds of the sale of the partnership property, there first be paid the necessary expenses and attorneys' fees in conjunction with the sale and in conjunction with winding up the business of the partnership, and that any balance remaining be applied in payment of the shares of Carlson and Winsor both in the sum of $21,395.50, plus interest as above set forth.

(13) That in the event such assets were insufficient to pay them their full share of such partnership assets, they have judgment against Duffy, as administrator, for any balance due them.

(14) That nothing contained therein should in any manner affect or prejudice the rights of said Carlson and Winsor against Duffy individually for any personal liability on his part.

On December 12, 1951, Duffy, as administrator, moved for an order modifying the foregoing in the following particulars:

(1) By giving Duffy, as administrator c. t. a., credit for sums expended which inured to the benefit of the partnership, which included the following:

(a) Expenses incurred in defending the partnership from claims of third persons.

(b) Accounting fees.

(c) Money paid for repairs on premises.

(d) Management expenses.

(e) Expenses and management in connection with the collection of accounts.

(2) By determining that Carlson and Winsor had consented to the management of Duffy, as administrator, when they took employment and accepted compensation from him as such subsequent

to the death of George A. Mooreside and made no claim until January 1950.

(3) By determining that at the time of the death of George A. Mooreside the property was not adequately protected against loss by fire, and that said Duffy, as administrator *c. t. a.*, was, therefore, unjustly charged with shrinkage in partnership assets resulting from the failure to have full coverage on the property destroyed.

(4) By determining that certain accounts receivable, for which full charges were made against Duffy, as administrator, were worthless and should not have been charged against the estate.

(5) By determining that the shrinkage in the estate from May 10, 1947, to July 22, 1947, during which time he did not act as administrator *c. t. a.*, in the sum of $7,821.65 was improperly charged against him.

This motion was denied, but an amendment was made providing that the words "administrator C. T. A. of the estate of George A. Mooreside, deceased," be added to the name Harry L. Duffy where-ever such name appeared in such findings.

On February 27, 1952, judgment based upon the foregoing finding and order and upon the findings and order of December 6, 1949, and December 27, 1949, was filed.

On April 8, 1952, upon the files and records and upon certain affidavits, Duffy, as administrator *c. t. a.*, moved for an order vacat-ing the judgment and for a new trial on the following grounds:

(1) That because of the death of the reporter a transcript of the testimony in the proceedings was unavailable.

(2) That prior to the death of such reporter, Duffy, as adminis-trator *c. t. a.*, was without funds to procure such transcript so that his motion for a new trial might be made or a settled case proposed.

(3) That the widow and children of defendant George A. Moore-side were indigent and without funds to take an appeal or to pro-cure a transcript.

(4) That the conflict in the findings made on December 6, 1949, with those of December 22, 1949, make it impossible to determine without a transcript which found support in the evidence.

The motion was denied on May 1, 1952.

On May 13, 1952, defendants Carlson and Winsor petitioned for an order directing Duffy, as administrator *c. t. a.* of the estate of George A. Mooreside, to show cause why he should not be adjudged in contempt for his failure to pay them, as surviving partners, the sum of $3,725 previously paid him as fees subsequent to his appointment as administrator. At the hearing thereon, in opposition thereto, Duffy, as administrator *c. t. a.,* presented an affidavit wherein he set forth in full his conduct with reference to the business subsequent to his appointment as administrator as follows:

(1) That subsequent to the death of George A. Mooreside, at the request of the Honorable Lawrence J. Green, judge of the probate court of Anoka county, he agreed to accept appointment as administrator *c. t. a.* of George A. Mooreside's estate and took over operation and management thereof on July 22, 1947.

(2) That at that time the court directed him that for his time and effort in operating the business he received the sum of $300 per month.

(3) That he operated and managed the business from July 1947 to January 1948, paying himself for such services the sum of $300 per month; that the business could not be operated profitably so that he determined to wind up its affairs.

(4) That the court then directed that he receive the sum of $150 per month for his services in winding up the business; that pursuant to such directions he sought and obtained tenants, collected rents, directed the collection of accounts, wound up the books and affairs of the business and, in addition, administered the general affairs of the estate, receiving therefor $150 per month for a seven-month period.

(5) That thereafter the probate court directed that he receive $100 per month for his services and $25 for his office expenses; that pursuant thereto he received $100 per month for services and $25 a month for expenses for the seven-month period from August 1948 to February 1949.

(6) That except for the payments stated, all of which he received by order of the probate court, he received no other compensation or funds.

(7) That on May 17, 1950, he turned over all books of account and assets of every nature and description to Carlson and Winsor as surviving partners.

(8) That after he took possession of the business in July 1947, he found working there seven individuals who were designated in Mooreside's will as "faithful employees"; that among these were Carlson and Winsor; that the books and records of the business disclosed that they had received wages from decedent and from the special administrator during the entire period in which they claimed they were partners; that thereafter he continued to treat them as employees and paid them wages at the rate of $55 per week from July 1947 to January 1948, when the business was terminated; that such wages were paid to them by checks signed by him as administrator and were accepted and cashed by them without protest; that the total wages paid them for such period approximated $3,000, and that, in addition, they received certain cash commissions on collections.

(9) That the first notice he had that Carlson and Winsor claimed any interest in the business was on November 21, 1947, when he was served a copy of the complaint in the first action, in which they claimed equal partnership rights with George A. Mooreside; that at that time he had already expended considerable sums of the funds of the business, including $1,500 of the amount paid himself for services, as well as the wages paid Carlson and Winsor for which no credit was later given him.

(10) That at the time of the commencement of this action he directed it to the attention of the probate court and that he was then advised by the probate court that it was his duty to contest and defend it, particularly since no written evidence of a co-partnership was found among the papers of George A. Mooreside and no evidence was submitted as to any partnership agreement in the pleadings; and that the steps taken by him thereafter in defending such action

248

were pursuant to such directions of the probate court of Anoka county.

There was also submitted in opposition to the petition the affidavit of Lawrence J. Green, judge of the probate court of Anoka county, wherein he stated:

(1) That the will of George A. Mooreside which was admitted to probate in Anoka county named seven individuals as "faithful employees," including Carlson and Winsor, who were to receive the principal asset of the estate which was the plant and its equipment.

(2) That he considered it to the best interests of these beneficiaries to continue operation of the business during probate and thereby to provide continued employment for them, since under the terms of the will they would eventually become the owners of the plant.

(3) That he then appointed John G. Erickson, a close friend of decedent, as special administrator, and authorized him to operate the business. That in July 1947, when said Erickson declined to act further, he turned to Harry S. Duffy of Anoka, who had considerable experience in the lumber business, and requested that he accept appointment as administrator *c. t. a.* of the estate, and thereafter to continue to operate and manage the business; that said Duffy, because of his own personal business, was reluctant to accept such additional responsibilities but was finally persuaded to accept the appointment as a personal favor to the court; that Duffy qualified as administrator on July 22, 1947.

(4) That at that time, in his official capacity as probate judge, he directed Duffy to operate the business, administer the affairs of the estate, and pay himself $300 per month out of the estate for such services.

(5) That in November 1947 Duffy delivered to him, as judge of probate, summons and complaint in an action in which Carlson and Winsor were plaintiffs in which they claimed to be equal partners with George A. Mooreside in the business; that he knew that said Carlson and Winsor had been designated as "faithful employees" and beneficiaries in the will, and upon inquiry learned that they

had no written partnership agreement, and that none could be found among decedent's records or the records of the business; that there was a surviving widow and children whose interests had to be protected, and that it was his considered judgment that the suit be resisted, and he so directed the administrator.

(6) That in January 1948 the administrator advised him that it was not in the best interests of the estate to continue to operate the business; that dissension had developed among the employees because of the action taken by Carlson and Winsor and the claims made by decedent's surviving widow and children; that he thereupon directed Duffy, as administrator, to cease operating the business and to rent out the property, collect the outstanding accounts, and wind up the books and affairs of the business and to pay himself the sum of $150 per month during the process.

(7) That in August 1948 Duffy advised him that the work involved in handling the affairs of the estate had lessened and in view of the delay occasioned by the lawsuits against the estate he felt that a reduction of his monthly fees was in order; that he then directed that Duffy reduce his fees to $100 per month, plus $25 per month for the expenses of his office.

On August 7, 1952, the trial court, upon the hearing on the petition to find Duffy in contempt, made findings and conclusions in substance as follows:

(1) That defendant Duffy, as administrator c. t. a. of the estate of George A. Mooreside, wilfully refused to obey the order and decree of the court directing him to repay to Carlson and Winsor, as surviving partners, the sum of $3,725 previously paid to him for services rendered as administrator c. t. a. in the estate of George A. Mooreside, deceased.

(2) That because thereof he was guilty of contempt of court.

(3) That he be sentenced and confined in the workhouse until his compliance with the order and judgment commanding him to pay the aforesaid sum to Carlson and Winsor, as surviving partners, such confinement not to exceed six months.

On August 25, 1952, Duffy as administrator *c. t. a.* appealed from the judgment described and from the order and decree of August 7, 1952, adjudging him in contempt of court. In this appeal he was joined by defendant beneficiaries under the will and heirs at law of George A. Mooreside.

■ No appeal was taken from the order of January 31, 1950, dismissing the administrator's motion for a new trial on the minutes. However, under M. S. A. 605.09, an intermediate order, such as this, which materially affects a judgment subsequently entered, may be reviewed on appeal from the judgment. W. T. Rawleigh Co. v. Shogren, 192 Minn. 483, 257 N. W. 102; Lundblad v. Erickson, 180 Minn. 185, 230 N. W. 473; Zywiec v. City of South St. Paul, 234 Minn. 18, 47 N. W. (2d) 465. While no assignment of error here challenges the order referred to, it does appear to form the basis of much of the litigation and the complexities which followed, so that we feel that, in justice and because of the seriousness of the questions involved, it should be determined whether there was error in the making of such order. Eaton v. Eaton, 161 Minn. 293, 201 N. W. 289; Taney v. Hodson, 170 Minn. 230, 212 N. W. 196.

■ M. S. A. 547.01 provides for a new trial as a matter of right for certain specified causes, including those presented here by the administrator in his motion on the minutes; to wit, errors of law occurring at the trial and assigned in the motion, and that the decision is not justified by the evidence. Section 547.02 authorizes such a motion upon the minutes within 15 days of a decision and for hearing thereon within 30 days of notice of such decision.[2] Section 484.29 provides that when the judge before whom the cause was tried is no longer in office or is disabled another judge of the same judicial district may act in his place in determining the motion. G. N. Ry. Co. v. Becher-Barrett-Lockerby Co. 200 Minn. 258, 274 N. W. 522; School Dist. No. 1 v. Aiton, 175 Minn. 346, 221 N. W. 424; Noonan v. Spear, 125 Minn. 475, 147 N. W. 654.

---

[2]Notice of the order vacating the first findings and order and making new findings and order for judgment was served upon the attorneys for defendant administrator on January 3, 1950.

■ In such cases, it is essential that the successor judge *exercise* the jurisdiction authorized by the foregoing statutes and either grant or deny the motion. He cannot refuse to pass upon it on the ground that he lacks jurisdiction to hear or determine it.

In Hughley v. City of Wabasha, 69 Minn. 245, 247, 72 N. W. 78, this rule is expressed as follows:

"Where a motion for a new trial is made before a nisi prius judge in a cause which has been tried before another judge, * * * he has the right, *and it is his duty,* to exercise the same discretion in determining whether the motion should be granted as if the cause had been tried before himself, * * * his discretion must have been exercised exclusively upon what the record discloses. * * *

"* * * *in such a case a judge must exercise his discretion,* * * *." (Italics supplied.)

■ Under early common-law practice, a motion for a new trial made to a judge other than the trial judge ordinarily was granted as a matter of right. Coke v. Gordon Motor Co. Inc. 18 Va. L. Reg. 166; Annotation, Ann. Cas. 1914B, 1236. Where statutes, such as § 547.01, have been enacted regulating motions for new trial, they are no longer granted by the successor as a matter of course. 39 Am. Jur., New Trial, § 196. In such cases, if the transcript or bill of exceptions, or minutes of the trial court, is sufficient to enable him to pass fairly and intelligently on the question, he is authorized to grant or deny the motion upon the record thus presented. Meldrum v. United States (9 Cir.) 151 F. 177. If, however, on the basis of the record, he cannot so act, justice then requires that a new trial be granted. School Dist. No. 1 v. Aiton, 175 Minn. 346, 221 N. W. 424; Federal Deposit Ins. Corp. v. Siraco (2 Cir.) 174 F. (2d) 360; Smith v. Dental Products Co. Inc. (7 Cir.) 168 F. (2d) 516.

This principle is expressed in Penn Mut. L. Ins. Co. v. Ashe (6 Cir.) 145 F. 593, 596, 7 Ann. Cas. 491, as follows:

"* * * The general rule * * * is that where a party, without laches on his part, loses the benefit of his exceptions through the death or illness of the judge, a new trial will be granted. * * *

Section 953, as amended, enforces this just doctrine by providing that where the trial judge, by reason of death, sickness, or other disability, is unable to hear or pass upon a motion for a new trial, * * * his successor shall do so if the evidence has been or is taken in stenographic notes, or if he is satisfied by any other means that he can pass upon such motion, * * *. This * * * is authority * * * to pass upon the motion for a new trial * * * only in case *he is furnished with the information, either by stenographic notes of the evidence, or otherwise, which will enable him to do so fairly and intelligently; and, if he cannot pass fairly and intelligently upon the questions* * * *, he is given authority, according to the general rule, to grant a new trial.

"*Since the judge below conceded he could not pass fairly upon the motion for a new trial* * * * *the only authority he could exercise, under the section, was to grant a new trial.*" (Italics supplied.)

■ With these principles in mind, it would seem clear in the instant case that the successor judge erred in sustaining the special appearances of plaintiff and defendants Carlson and Winsor and their objections to his jurisdiction to hear and determine the motion upon the minutes and, in consequence, ordering a dismissal of the motion. Since the motion was made within 15 days of notice of filing of the amended finding and order and was set for hearing within 30 days therefrom, it was clearly authorized under M. S. A. 547.01 and 547.02, and the successor judge had jurisdiction to hear and act upon it. If, because of the insufficiency of the record before him at the time, he could not "fairly and intelligently" determine therefrom which of the two conflicting findings[3] found support

---

[3]Comparison of the findings of December 6, 1949, with those of December 22, 1949, indicates a direct conflict therein. Those of December 6, 1949, determined: (1) That the real estate involved constituted the homestead of George A. Mooreside; (2) that the lumber furnished by plaintiff was used in the woodworking plant and was for the benefit thereof; (3) that there was no partnership agreement between defendant George A. Mooreside and Carlson and Winsor.

The findings of December 22, 1949, determined: (1) That the real estate

therein, it then became incumbent upon him to grant a new trial. In a memorandum attached to the second set of findings, the trial judge stated that he had overlooked certain undisputed evidence when making the first findings. This was disputed by the administrator and, without a transcript, obviously it was inpossible for the successor judge to determine whether this basis for the new findings was sound or to otherwise "fairly and intelligently" pass upon the motion.

In dismissing the motion because of the mistaken belief that he lacked jurisdiction to act upon the minutes, the trial judge was denying the administrator the right conferred upon him by § 547.01. Had the absence of the transcript made it impossible to act "fairly and intelligently" on the motion, as appears more than likely, then it should have been granted and the administrator would not have been confronted with the need of raising $1,500 for a transcript or later have become involved in the multiplicity of proceedings that followed his inability to raise this sum.

■ As the case now stands, many perplexing problems have arisen which, in justice, should be determined but cannot be in view of the present record. Thus, we cannot determine the basis of the trial court's finding that Carlson and Winsor were partners of defendant George A. Mooreside. We do not know upon what evidence it was determined that plaintiff's lumber was used exclusively by George A. Mooreside rather than by the plant. We do not understand the basis for setting aside the orders of the probate court authorizing the administrator to make certain expenditures in the operation of the business. We do not fully understand the basis of the accounting under which the administrator was held responsible for interest on the claims of Carlson and Winsor for the period during which they worked for the plant and received payment therefor. We cannot ascertain why the administrator was held respon-

did not constitute the homestead of defendant George A. Mooreside; (2) that the lumber furnished by plaintiff was used not in the woodworking plant but exclusively by and for the benefit of George A. Mooreside; (3) that there was a partnership agreement between George A. Mooreside and Carlson and Winsor.

sible for bad debts, shrinkage in the value of assets because of loss by fire, and other similar charges, as was determined in connection with the accounting proceedings.

We cannot place the blame for the status of the present record upon the administrator because of his refusal or inability to advance his personal funds to continue the litigation. The interests of the beneficiaries under the will, as well as those of the heirs at law, are at stake here, without their having had a fair opportunity to exercise their statutory right to a new trial for error, if any, or to the full processes of an appeal from the numerous orders and determinations made in the proceedings.

The history of the litigation up to this point leaves grave doubts as to whether justice has been attained. It is primarily for this reason that we feel a new trial on all issues must be ordered.

Many other questions are presented here. Some of the points raised by plaintiff and by the defendants Carlson and Winsor appear to have much merit, but, in view of the overall status of this litigation and the conclusions expressed above, we feel that only through a new trial will the litigants have an opportunity for a fair determination of the many important issues presented.

The judgment and order appealed from are reversed and a new trial is ordered.

Reversed.

UPON PETITION FOR REHEARING.

On February 19, 1954, the following opinion was filed:

PER CURIAM.

Our attention has been directed to the fact that no notice of the appeal herein was served upon plaintiff receiver or upon Nick Kirchansky and Jo-Ann Realty Corporation, respective purchasers of the partnership assets at two court sales ordered February 27, 1952, and confirmed August 21, 1951, and January 29, 1952.

Under M. S. A. 605.03, whenever the judgment or order appealed from is indivisible so that it must be affirmed, modified, or reversed as to all parties, notice of appeal therefrom must be given to every

party whose interest in the subject of the appeal is in direct conflict with an affirmance, reversal, or modification of the judgment or order appealed from. Henderson v. Northwest Airlines, Inc. 231 Minn. 503, 43 N. W. (2d) 786; Long v. Ryan, 203 Minn. 332, 281 N. W. 75; Thwing v. McDonald, 139 Minn. 157, 165 N. W. 1065; Kells v. Nelson-Tenney Lbr. Co. 74 Minn. 8, 76 N. W. 790. Based thereon, it has been held that the purchaser at a sale which is made subject to court approval is a necessary and adverse party to an appeal from the order confirming the sale. In re Sale of Land to Prudential Ins. Co. 238 Minn. 497, 57 N. W. (2d) 245; Kells v. Nelson-Tenney Lbr. Co. *supra*.

Conversely it also appears settled that, when an adverse party has not been served with notice of appeal from a judgment or order which is divisible, the appeal need not be dismissed but our consideration thereof will be limited to issues between appellant and the parties properly served with such notice. Breen v. Cameron, 132 Minn. 357, 157 N. W. 500; Frost v. St. Paul Bank. & Inv. Co. 57 Minn. 325, 59 N. W. 308.

Reference to our opinion clearly manifests that both the judgment and order from which the present appeal is taken are divisible. It follows that the appeal should not be dismissed as to the issues between appellant and parties properly served with notice thereof. As to plaintiff, there should be no relitigation of the issues which gave rise to his judgment. As to the purchasers at the court sales, the property rights acquired by them at such sales cannot be invalidated.

In both the original and amended findings plaintiff obtained an order for judgment in the amount of $25,000 against the estate of George A. Mooreside. As counsel for appellants states, they "do not now dispute, nor have they raised by appeal the judgment creditor interest of the plaintiff in decedent's estate." Should a new trial again result in a determination that a partnership existed between Mooreside and Winsor and Carlson, plaintiff would remain in his present position. Should it result in a determination that no partnership existed, his lien would then extend to *all* assets

of the business and the measure of security for his judgment would increase accordingly. It would appear, therefore, that with this limitation no harm will result to him by retrial of the other issues. The failure to serve him with notice of the appeal, therefore, does not constitute grounds for its dismissal.

The present appeal is not from the orders confirming the sale of the partnership assets either to Nick Kirchansky or to Jo-Ann Realty Corporation and hence is distinguishable from the appeals in In re Sale of Land to Prudential Ins. Co. 238 Minn. 497, 57 N. W. (2d) 245, and Kells v. Nelson-Tenney Lbr. Co. 74 Minn. 8, 76 N. W. 790. The issues presented for determination here do not relate to the sale or the order confirming it. As counsel for appellants state: "* * * the issue of the validity of the sale is not being litigated." There is no attempt to recover the property sold on the ground that the sale thereof was wrongful. The purchasers continue to hold valid title to the properties purchased by them, and their rights therein are not affected by any modification or redetermination of the issues which might result from a new trial. If it should be determined therein that no partnership existed, appellant's rights would extend to the proceeds of such sales rather than to the properties sold thereat. It follows that failure to serve notice of appeal upon such purchasers did not limit our jurisdiction to determine other issues presented in the appeal nor serve as the basis for its dismissal.

Our previous opinion and order for a new trial is limited in accordance with the foregoing; the petition for reargument and motions to dismiss the appeal are in all respects denied.

MR. JUSTICE NELSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.